Michael **ANKNEY**, Appellant–
Defendant,

v.

**STATE** of Indiana, Appellee–Plaintiff.

No. 15A05–0404–CR–216.

Court of Appeals of Indiana.

April 26, 2005.

Transfer Denied July 13, 2005.

---

Leanna Weissmann, Lawrenceburg, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Grant H. Carlton, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

NAJAM, Judge.

### STATEMENT OF THE CASE

Michael Ankney appeals his convictions for Attempted Escape, as a Class B felony, two counts of Battery, as Class C felonies, Battery, as a Class D felony, and Resisting Law Enforcement, as a Class D felony, following a jury trial. He presents the following issues for our review:

1. Whether the trial court abused its discretion when it excluded evidence of his mental illness at trial.

2. Whether his convictions for attempted escape and resisting law enforcement violate double jeopardy.

3. Whether the trial court abused its discretion when it sentenced him.

We affirm in part, reverse in part, and remand with instructions.

### FACTS AND PROCEDURAL HISTORY

On January 13, 2002, Indiana State Police Detective Samuel Arp was patrolling U.S. 50 in Lawrenceburg when he saw Ankney walking along the highway. Detective Arp stopped to talk to Ankney, who smelled like alcohol. Detective Arp observed that Ankney had bloodshot eyes and slurred speech. When Ankney refused to take a breath test, Detective Arp arrested him for public intoxication and transported him to the Dearborn County Law Enforcement Center ("the LEC").

Officers Foresteen Hann and Rebecca Giles were in charge of booking arrestees at the LEC when Ankney arrived. Officer Giles took Ankney to a changing room and told him to change out of his street clothes and into a jail uniform. When Ankney first emerged from the changing room, he had failed to remove the socks he was wearing when he arrived at the LEC. Accordingly, Officer Giles instructed him to return to the changing room and change out of his socks. At some point, Officer Hann approached the changing room to see whether Officer Giles needed assistance. Ankney approached Officer Hann and suddenly struck her in the face and knocked her to the floor. He then struck Officer Giles and knocked her to the floor, as well.

Ankney then ran for an exit, but another officer was able to secure the door before he got to it. Detective Arp then approached Ankney, and Ankney "charged" him. Transcript at 261. As Detective Arp tried to subdue Ankney, Ankney struck him several times with his fists. Finally, another officer was able to assist Detective Arp in restraining Ankney. Officer Hann was later treated for a broken nose; Officer Giles was treated for a detached retina and swelling in one of her eyes; and Officer Arp underwent treatment for a knee injury he sustained during the altercation with Ankney.

The State charged Ankney with public intoxication, false informing,[1] attempted escape, three counts of battery, and resisting law enforcement. The attempted escape, battery, and resisting law enforcement counts were all elevated to higher classes of offenses based upon the bodily injuries sustained by the officers. Because Ankney exhibited signs of mental illness at

---

1. Ankney initially gave the officers a false name.

the time of his arraignment on January 15, 2002, the trial court ordered that he undergo evaluations with two psychiatrists to determine his competency to stand trial. In a letter dated January 17, 2002, those physicians concluded in relevant part as follows:

> [Ankney] has a history of mental illness and is currently in a state of psychotic decompensation.
>
> It is obvious that he is not competent to stand trial at this time but considered to be restorable with appropriate psychiatric treatment.

Appellant's App. at 27. After undergoing treatment, Ankney was ultimately deemed competent to stand trial and returned to the LEC. Because Ankney continued to exhibit symptoms of his mental illness, his counsel requested a reevaluation of his competency on July 25, 2003. Accordingly, the trial court ordered that Ankney again be evaluated by two psychiatrists, who concluded that he was competent to stand trial.

During a December 12, 2003 hearing, Ankney conceded that he was competent to stand trial. However, his counsel advised the trial court and the State as follows:

> Mr. Ankney wants this matter brought to trial as soon as possible and I concur with that, although I am going to proceed with a defense and I will put the State on notice at this time that when this action occurred, that Mr. Ankney was not ... in essence I guess [we would assert] an insanity defense ... a temporary insanity defense that because of his mental condition at the time, he was not able to control his actions or appreciate the fact that they were illegal and the consequences thereof, and in order to pursue that defense we might have to ask for a continuance if I can't get that evidence before the Court in

time or prepared in time by January 5....

Transcript at 31. But Ankney never submitted a written notice of his intention to assert an insanity defense, nor did he move for a continuance or submit evidence to the trial court in support of such a defense.

When Ankney's jury trial began on February 2, 2004, the trial court ruled on the State's motion in limine, which sought to preclude Ankney from asserting an insanity defense. The trial court granted the motion, but explained that ruling as follows:

> COURT: What that means is ... before you can present any such evidence [of Ankney's mental illness] you're going to have to approach the bench and obtain permission from the Court.... I think we've discussed this in chambers, is that acceptable Counsel?
>
> [Ankney's Counsel]: Yes, Your Honor.
>
> COURT: That's not saying that such evidence may not be permitted, ... it just means you're going to have to approach the bench and obtain permission from the Court after making an offer to prove so I can see where this is at....

Transcript at 37. Ankney only made one offer to prove in an effort to present evidence of his mental illness, but the trial court excluded that proffered testimony. The jury acquitted Ankney on the public intoxication and false informing charges, but found him guilty of the remaining charges. The trial court entered judgment accordingly and sentenced him to a total executed term of fifteen years. This appeal ensued.

## DISCUSSION AND DECISION

### Issue One: Insanity Defense

■ Ankney first contends that his oral notice of his intention to assert an insanity

defense was sufficient under Indiana Code Section 35–36–2–1. That statute provides in relevant part that a defendant who intends to assert an insanity defense must "file a notice of that intent with the trial court no later than: (1) twenty (20) days [before the omnibus date] if the defendant is charged with a felony[.]" Ind.Code § 35–36–2–1. "However, in the interest of justice and upon a showing of good cause, the court may permit the filing to be made at any time before commencement of the trial." *Id.*

■ Here, it is undisputed that Ankney attempted a late filing of the required notice, and, thus, the trial court had discretion whether to accept it. *See Eveler v. State,* 524 N.E.2d 9, 11 (Ind.1988) (noting "trial court's discretion controlled" where defendant filed late notice of insanity defense). "Such discretion is exercisable upon a showing of good cause by a defendant who has missed the deadline." *Id.* Ankney does not demonstrate, and our review of the record does not reveal, that he made a showing of good cause as to why his late notice should be accepted.[2] As such, we hold that the trial court did not abuse its discretion when it denied his belated, oral motion to assert an insanity defense.[3] *See id.* (holding trial court did not abuse its discretion in denying belated motion to assert insanity defense where defendant did not make showing of good cause as required by statute).

■ In the alternative, Ankney contends that the trial court denied him his right to present a defense under the state and federal constitutions when it excluded evidence of his mental illness. But "as a general proposition Indiana has long held that a defendant may not submit evidence relating to mental disease or defect except through an insanity defense." *Marley v. State,* 747 N.E.2d 1123, 1128 (Ind.2001). Ankney does not contend that he was denied an opportunity to assert an insanity defense. Because evidence of his mental illness was only admissible through an insanity defense, which was available to him, Ankney's contention on this issue must fail. *See id.*

Moreover, the trial court explicitly ruled that it might permit evidence of Ankney's mental illness if he sought permission and made an offer to prove in support of any such proffered evidence. And during trial, Ankney only made one offer to prove concerning proffered testimony of his history of mental illness. Ankney was testifying about the events at the LEC on January 13, 2002, and he stated that "there was a memory of an attacker at my rear and I was simply running away." Transcript at 315. Ankney's counsel then requested a side bar, and the following colloquy occurred:

> [Ankney's counsel]: I assume I'm not going to be able to go through his history since he's been locked up as far as being found incompetent and sent to Logansport for awhile or whatever?
>
> [State]: He's been declared competent for trial.
>
> COURT: ... I would have to sustain that objection on that.
>
> [Ankney's counsel]: I'd like to make an offer to prove just for the record.
>
> COURT: Proceed.

---

**2.** Indeed, nothing in the record indicates that Ankney did anything to pursue an insanity defense after he gave his oral notice at the competency hearing in December 2003.

**3.** The record does not reveal whether the trial court denied his belated motion to assert an insanity defense, or whether Ankney merely withdrew the motion. For purposes of this appeal, we will assume that the trial court denied the motion.

[Ankney's counsel]: I would like to make an offer to prove that if Mr. Ankney was allowed to go into his psychiatric history, *it would directly affect his relevance as far as his ability to testify and for the jury to understand his testimony;* that it is very relevant, and *what he is saying here today does not make any sense unless they can put it into perspective with his past history,* and that we would argue that we should have the right to test the law on the issue of whether or not you cannot bring up a person's mental history just because they do not file for an insanity defense. I don't think that an insanity defense is always warranted even though there may be mental issues involved as far as going to intent, and I think that the defendant should not have to put in a motion for guilty but mentally ill, because I think that such a plea does not help the defendant in any way whatsoever and merely limits his ability to get an acquittal, so I'd like to offer that ... we would go for those issues if we were allowed to at this point in time.

COURT: Response?

[State]: The State's response is based upon relevancy. The Indiana Supreme Court case *Cardine v. State,* 475 N.E.2d 696 [1985][sic]. The state of mind of the defendant is not an issue just because of the knowingly and intentionally [element] as that case points out in a murder case, whether there's diminished capacity is not a defense, incompetency is not relevant, the insanity defense was not raised, the State objects on relevancy grounds.

COURT: I'm going to sustain the objection. Your offer to prove is noted ... and I also want to note for the record that the recent examination reflected in the Court's file found that Mr. Ankney was determined to be competent to stand trial at this time, and that no defense has been filed of insanity.

Transcript at 315–16 (emphases added).

On appeal, in support of his contention that he was denied his right to present a defense, Ankney states that he "sought to undermine the State's evidence of intent by presenting to the jury his history of mental illness. Because he was not allowed to do so, the jury had nothing to explain his unusual actions at the jail to determine how those actions bore on the ultimate issue of intent." Brief of Appellant at 20. But Ankney did not specifically proffer the evidence for the purpose of showing lack of intent. Instead, his stated purpose for the proffered evidence was to help the jury better understand his testimony. We conclude that Ankney has not demonstrated that the trial court denied him his right to present a defense.

### Issue Two: Double Jeopardy

■ Ankney next contends that his convictions for battery and resisting law enforcement violate Indiana's Double Jeopardy Clause. In particular, he asserts that the same evidence used to convict him of the battery charges was used to convict him of the resisting law enforcement charge. We must agree.

■ As this court recently explained in *Vandergriff v. State,* 812 N.E.2d 1084, 1086 (Ind.Ct.App.2004), *trans. denied:*

"Two or more offenses are the 'same offense' in violation of Article I, Section 14 of the Indiana Constitution, if, with respect to *either* the statutory elements of the challenged crimes *or* the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." ... [T]he ac-

tual evidence test ... "prohibits multiple convictions if there is a 'reasonable possibility that the evidentiary facts used by the fact-finder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense.'" The defendant must show that the evidentiary facts establishing the elements of one offense also establish all of the elements of the second offense. Thus, even if "each charge utilizes the same factual event," no constitutional violation will be found if the second offense "requires additional evidentiary facts establishing the essential elements."

(Citations omitted, emphasis original).

Here, with regard to the resisting law enforcement charge, the information stated that Ankney:

Did knowingly forcibly resist a law enforcement officer, to-wit: Officer Samuel Arp, Officer Foresteen Hann and/or Officer Rebecca Giles, while the officers were lawfully engaged in their official duties as law enforcement officers, to-wit: booking Michael C. Ankney into jail, and while committing said offense did inflict bodily injury upon the officers, to-wit: severe pain and a broken nose to Foresteen Hann, severe pain and swelling to the eye area of Rebecca Giles, and pain and swelling to the knee of Samuel Arp[.]

Appellant's App. at 12. In addition, the State charged Ankney with battery for inflicting those same injuries upon each of the three officers. Thus, there is a reasonable possibility that the jury used the same evidence to convict Ankney of resisting law enforcement and each of the batteries. As a result, we remand to the trial court to vacate his conviction for resisting law enforcement. *See James v. State*, 755 N.E.2d 226 (Ind.Ct.App.2001) (holding resisting law enforcement conviction violated double jeopardy where same injury supported that conviction and aggravated battery conviction), *trans. denied.*

 Ankney also contends that his Class B felony attempted escape conviction and his felony battery convictions cannot stand because the same injuries were used to enhance each conviction.[4] We have long adhered to a series of rules of statutory construction and common law that are often described as double jeopardy, but are not governed by the constitutional test set forth in *Richardson v. State*, 717 N.E.2d 32 (Ind.1999). *Pierce v. State*, 761 N.E.2d 826, 830 (Ind.2002). Among these is the doctrine that where a burglary conviction is elevated to a Class A felony based on the same bodily injury that forms the basis of a Class B felony robbery conviction, the two cannot stand. *Id.* That principle applies here, and we instruct the trial court to reduce each of Ankney's battery convictions to Class A misdemeanors.[5] *See id.*

**Issue Three: Sentence**

 Finally, Ankney contends that the trial court abused its discretion when it

---

**4.** Escape is a Class C felony, but it is elevated to a Class B felony "if, while committing it, the person draws or uses a deadly weapon or inflicts bodily injury on another person." Ind.Code § 35-44-3-5. Battery is a Class B misdemeanor, but it is elevated to a Class D felony if it results in bodily injury to a law enforcement officer while that officer is engaged in the execution of his official duty. Ind.Code § 35-42-2-1. And battery is a Class C felony if it results in serious bodily injury to any other person. *See id.*

**5.** To convict Ankney for battery as a Class A misdemeanor, no proof of injury is required. It is sufficient to prove that Ankney knowingly or intentionally touched a law enforcement officer in a rude, insolent, or angry manner. *See* Ind.Code § 35-42-2-1(a)(1)(B).

imposed an enhanced sentence. The determination of the appropriate sentence rests within the discretion of the trial court, and we will not reverse the trial court's determination absent a showing of manifest abuse of that discretion. *Bacher v. State,* 722 N.E.2d 799, 801 (Ind.2000). The trial court's wide discretion extends to determining whether to increase the presumptive sentence, to impose consecutive sentences on multiple convictions, or both. *Singer v. State,* 674 N.E.2d 11, 13 (Ind.Ct. App.1996). If the sentence imposed is authorized by statute, we will not revise or set aside the sentence unless it is inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B); *McCann v. State,* 749 N.E.2d 1116, 1121 (Ind.2001).

During sentencing, the trial court identified two aggravators, namely, (1) "Ankney's prior history of two prior assaults and other acts of violence during the pendency of this action[,]" [6] and (2) that "Ankney is in need of correctional or rehabilitative treatment which can be best provided by a penal facility due to his dangerousness to the community at large shown by his attacks upon law enforcement officers, jail officers and other persons as set forth in the Pre–Sentence Investigation." Appellant's App. at 271. The trial court identified a single mitigator, namely, Ankney's mental illness, but stated that "the effect of mitigation must be tempered by [the] significant dangers to the community at large through his actions before, during and while awaiting trial in this matter." *Id.* at 271–72.

Ankney maintains that the trial court did not give enough mitigating weight to his mental illness. A finding of mitigating circumstances lies within the trial court's discretion. *Widener v. State,* 659 N.E.2d 529, 533 (Ind.1995). The trial court is not obligated to explain why it did not find a factor to be significantly mitigating. *Chambliss v. State,* 746 N.E.2d 73, 78 (Ind.2001). And the sentencing court is not required to place the same value on a mitigating circumstance as does the defendant. *Beason v. State,* 690 N.E.2d 277, 283–84 (Ind.1998).

Our supreme court has identified four factors "that bear on the weight, if any, that should be given to mental illness in sentencing." *Weeks v. State,* 697 N.E.2d 28, 30 (Ind.1998) (citing *Archer v. State,* 689 N.E.2d 678, 685 (Ind.1997)). Those factors are: (1) the extent of the defendant's inability to control his or her behavior due to the disorder or impairment; (2) overall limitations on functioning; (3) the duration of the mental illness; and (4) the extent of any nexus between the disorder or impairment and the commission of the crime. *Id.* In *Archer,* our supreme court held in part that:

> In a case where the court finds that defendant, who is mentally ill but able to distinguish right from wrong and therefore not legally insane, suffers from a serious mental illness, particularly a long-standing illness, or where that defendant's visions or voices led to bizarre behavior and played an integral part in the crime, the court may decide not to impose an enhanced sentence or may decide to otherwise accord significant

---

**6.** The presentence investigation report includes brief descriptions of "four jail incident[s]" as follows:
04/26/03 refusing to take medications
11/11/03 confrontation/pencil stabbing w/ another inmate
12/30/03 filled toilet w/pages from Bible
01/17/04 punching jail officer in jaw
Appellant's App. at 230.

weight to defendant's mental illness as a mitigating factor. On the other hand, where the mental illness is less severe and defendant appears to have more control over his thoughts and actions, or where the nexus between defendant's mental illness and the commission of the crime is less clear, the court may determine on the facts of a particular case that the mental illness warrants relatively little or no weight as a mitigating factor.

689 N.E.2d 678, 685 (footnotes omitted).

In *Archer*, the defendant pleaded guilty but mentally ill to four Class A felonies, namely, attempted murder, rape, and two counts of criminal deviate conduct, and he was found guilty of being an habitual offender following a bench trial. At sentencing, the trial court found several aggravators, including defendant's long criminal history, defendant was on parole at the time of the offenses, and the nature and circumstances of the crimes. The court found a single mitigator, namely, the defendant's mental illness. With regard to that mitigator, the trial court stated:

> ... although the Court does find that there is some evidence presented to the Court that the defendant has some psychological problems, the Court does not find that those psychological problems are to such an extent as to make it impossible for the defendant to control his actions and behavior in society. The Court further finds that any aggravating circumstances, as indicated by the Court, far outweigh that one mitigating circumstance.

*Archer*, 689 N.E.2d at 682. The trial court sentenced Archer to a total term of 165 years, and he appealed, alleging that his sentence was manifestly unreasonable.

On direct appeal, our supreme court observed that:

With regard to the one mitigating factor, to the extent that the court here makes any effort to go beyond a conclusional assertion that defendant has "some psychological problems," *the court seems to base its statement on the faulty premise that mental illness is an all or nothing proposition, and that unless a defendant is without any ability to control his actions and behavior by virtue of his mental illness, the court should accord little or no weight to his mental illness as a mitigating factor.* Specifically, the court stated that defendant's psychological problems are not "to such an extent as to make it impossible for the defendant to control his actions and behavior in society." (R. at 663.) *The court's premise is inconsistent with the nature of mental illness, as it has been described by the governing statute which defines it as including any disorder that "substantially disturbs" a person's behavior and "impairs" the person's ability to function.* Ind.Code § 35-36-1-1. Thus, while a defendant's ability to control his behavior may be one important factor to consider when evaluating the weight to be accorded a defendant's mental illness, it is also appropriate to recognize degrees of impairment of that ability, as well as other factors such as the overall limitations upon functioning and the longstanding nature of the mental illness. Stated another way, there may be many kinds of mental illnesses and different degrees to which a person's behavior can be "substantially disturbed" or his ability to function "impaired" within the meaning of Ind.Code § 35-36-1-1.

*Id.* at 684-85 (emphases added, footnotes omitted). And the court held that:

Although there are several aggravating circumstances which the court properly found, and although we agree that the facts in this case are "egregious," defen-

dant's mental illness should warrant at least some offset to these aggravating circumstances. We conclude that, because defendant's mental illness is well-documented and long-standing and because it apparently limits his ability to function, it is entitled to some mitigating weight and warrants a reduction of defendant's total sentence.

Accordingly, we affirm defendant's convictions. We reduce his sentence on the attempted murder and rape counts each from forty-five (45) to twenty-five (25) years, thus reducing the total sentence from one hundred sixty-five (165) to one hundred twenty-five (125) years.

*Id.* at 686.

In this case, at sentencing, the trial court found that Ankney's mental illness "as set forth in the Presentence Investigation" was a mitigating factor and stated that:

the effective mitigation must be tempered by his significant dangerousness to the community at large through his actions before, during and awaiting trial in this matter. Again, I note that during the proceedings today, he has risen from his seat and attempted to confront the Court, which behavior will not be tolerated, but I think is illustrative of his dangerousness that I'm taking into consideration here today.

Transcript at 389–90. The trial court did not acknowledge the severity or long-standing nature of Ankney's mental illness, and the court did not assess whether Ankney's illness renders him unable to control his behavior or otherwise limits his ability to function. *See Weeks*, 697 N.E.2d at 30.

Included in Ankney's presentence investigation report is the April 2002 competency evaluation report by Thomas Ingraham, M.D., a staff psychiatrist at Logansport State Hospital. That report states in relevant part:

*Over the course of the last 9 years, the patient reports having at least 10 psychiatric hospitalizations.*

\* \* \*

Over the course of the last several months, we have had the opportunity to closely monitor the patient's behavior in our facility. His psychiatric history and presentation on his current medication regimen would suggest the diagnosis of a *chronic mental illness, consistent with Schizoaffective Disorder.* ... I believe the diagnosis of Schizoaffective Disorder, Bipolar Type is an accurate description of the patient's psychiatric illness at this time. He certainly has responded well both to an atypical antipsychotic Zyprexa and a mood stabilizer Depakote. Certainly complicating his psychiatric presentation has been his long history of substance abuse.... The patient also has a long history of poor compliance with his medications and outpatient psychiatric care.... He has experienced multiple exacerbations of his mental illness over the last 9 years, largely as a result of his poor compliance with treatment....

\* \* \*

... [The patient] reports that he has had a *slow deterioration in his function over the last several years.* He is extremely frustrated that he is not able to achieve his potential, given his high level of education. He has also expressed his frustration at his social isolation and inability to maintain close relationships with other people in the world. He adequately describes the negative features of his illness to include ... social isolation, poor motivation and at times difficulty with communication. *The positive symptoms of his illness (hallucinations and paranoia)* have been ade-

quately addressed with psychotropic medications in the past.... Over time, the patient's negative symptoms may improve through the titration of his Zyprexa regimen. Mr. Ankney certainly has been amenable to this treatment plan since he does find the negative features to be particularly debilitating and frustrating for him. He understands the rationale of his medications.... *He is highly intelligent and does recognize the ramifications of his illness and the limitations placed on him by his illness.* He has however, demonstrated poor insight and judgment in the past concerning his illness and the need for ongoing continued care. He becomes frustrated with his progress and subsequently gives up and discontinues his treatment and medication.

During this hospitalization, the patient appears to have made some *progress in the area of insight and judgment concerning his illness and the need for treatment. He recognizes the need for ongoing treatment and particularly for compliance with his medication regimen to prevent any psychiatric decompensations or psychotic episodes.* I have also stressed the importance of abstinence from alcohol and drug abuse. The patient does understand that any psychiatric treatment or medication management would be undermined by any alcohol or substance abuse.

\* \* \*

... [Ankney] does have a significant mental illness, which requires ongoing psychiatric care and supervision.

\* \* \*

It is also my opinion that this patient will require ongoing psychiatric care likely for the remainder of his life. He requires close supervision to ensure compliance with his medication regimen and outpatient treatment. He likely would benefit from some type of supervision, such as a group home in the short-term in order to monitor his medications and ensure abstinence from drug or alcohol abuse. In all likelihood, the patient would decompensate into a psychotic state if his medication regimen were discontinued at this time....

Appellant's App. at 246–53 (emphases added).

In enhancing Ankney's sentence, the trial court relied in part on "other acts of violence" by Ankney while he was in jail awaiting trial. One of those incidents was described by the investigating officers as follows:

On 11–13–2003 at about 1:45 p.m., I met with William Hoeweller in my office. I photographed his injury with a Polaroid camera and then questioned him regarding the incident. Hoeweller stated that Sgt. McGown had talked to Hoeweller and Ankney earlier and Ankney told McGown that, "Billy's got a dark soul," and "He's a bigot." Later in the afternoon, Ankney slammed down the remote for the TV and broke it. Hoeweller let McGown know about the remote and had talked to [him] and Officer Daily two days ago telling them that Ankney was going to snap. After Ankney broke the remote, he went into his cell and locked himself in. Ankney went to outdoor recreation with the others, Hoeweller stayed in. Just before medication passing, LaMont Clark made a statement, "I'd like to watch TV, but someone broke the remote." Ankney went back to his room and was very quiet. Clark went to his own room. Ankney came out of his room, kicked Hoeweller in the chest and came down on him with a pencil and struck him on top of his right shoulder. Ankney was saying at

the time, *"You've got demons! I killed you—you should have been dead a long time ago."* Hoeweller jumped up and got away from him. Ankney went to Hoeweller's cell and Hoeweller told him to go back to his room. Ankney stayed there until Officer Carlton and Officer Parsons came and took him to [the] holding area.

Appellant's App. at 234 (emphasis added).

In light of the well-documented evidence of Ankney's significant and long-standing mental illness, we conclude that it is entitled to some mitigating weight and warrants a reduction in his total sentence. As we have already noted, our supreme court in *Archer* reduced the defendant's sentence based on the evidence of his mental illness which, the court concluded, "apparently limits his ability to function[.]" 689 N.E.2d at 686. Further, in *Weeks,* our supreme court ordered a reduction in the defendant's sentence [7] to the presumptive term despite the lack of a "clear nexus between Weeks's illness and the killing[.]" 697 N.E.2d at 31. Weeks had been diagnosed as having schizophrenia, schizoaffective disorder, and bipolar disorder. The court concluded that it was sufficient that "Weeks's apparently spontaneous act of following [his victim] to the restroom and shooting him, as well as Weeks's denial of the incident after the fact, are consistent with, if not the obvious product of, his mental impairments." *Id.*

Likewise, here, Ankney's attacks on the officers and attempted escape are "consistent with, if not the obvious product of," his mental illness, which includes paranoia. *See id.* Further, within two days after his arrest, two physicians concluded that he

was in "a state of psychotic decompensation." Appellant's App. at 27. "Psychosis" is defined as "[a] severe mental disorder ... characterized by derangement of personality and loss of contact with reality and causing *deterioration of normal social functioning.*" THE AMERICAN HERITAGE DICTIONARY 1462 (3d ed.1992) (emphasis added). Thus, the physicians' report shows that Ankney's "ability to function" was limited within two days after he committed the offenses. *See Archer,* 689 N.E.2d at 686.

Relying on our supreme court's reasoning in *Archer* and *Weeks,* and taking Ankney's mental illness into account, we hold that Ankney's fifteen-year sentence is inappropriate in light of the nature of the offenses and Ankney's character. *See* App. R. 7(B). Accordingly, we instruct the trial court to reduce Ankney's sentence for his Class B felony attempted escape conviction to the presumptive term of ten years. *See Archer,* 689 N.E.2d at 686; *Weeks,* 697 N.E.2d at 31 (holding reduction to presumptive sentence warranted despite "egregious" nature of offense where evidence showed severe and long-standing mental illness). Also on remand, the trial court should impose the presumptive sentence for each of Ankney's reduced battery convictions, and all of the sentences should run concurrently, for a total term of ten years.[8]

## CONCLUSION

In sum, we remand to the trial court with instructions to vacate Ankney's resisting law enforcement conviction and to reduce his battery convictions to Class A

---

7. Weeks was convicted of murder after a jury found him guilty but mentally ill. The trial court sentenced him to sixty years. *Weeks,* 697 N.E.2d at 29.

8. Because we are reducing Ankney's sentence to the presumptive, we need not address his contention that his sentence is unconstitutional under *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

misdemeanors. And on resentencing, the trial court should impose the presumptive sentence for each of Ankney's convictions, to run concurrently, for a total term of ten years.

Affirmed in part, reversed in part, and remanded with instructions.

KIRSCH, C.J., and VAIDIK, J., concur.