**FILED**
May 29 2015, 8:39 am
CLERK
of the supreme court,
court of appeals and
tax court



ATTORNEY FOR APPELLANT

Paula M. Sauer
Danville, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Chandra K. Hein
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Shaheen Zamani,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

May 29, 2015

Court of Appeals Case No.
32A05-1406-CR-264

Appeal from the Hendricks Superior
Court

The Honorable Mark A. Smith,
Judge

Cause No. 32D04-1211-FA-19

**Brown, Judge.**

Shaheen Zamani appeals his conviction for attempted murder and raises two issues, which we revise and restate as:

I. Whether the trial court abused its discretion in denying his belated request to assert an insanity defense; and

II. Whether the prosecutor committed misconduct during closing argument which resulted in fundamental error.

We affirm.

### Facts and Procedural History

In November 2010, James Scurlock began dating Margarita Aguirre, who was Zamani's mother, and in January 2011, Aguirre moved into Scurlock's residence in Plainfield, Indiana. Zamani lived in an apartment on the north side of Indianapolis. One day in early October 2012, Zamani arrived at the residence of Scurlock and Aguirre, the three ate dinner and watched television, and Zamani stayed the night. Zamani brought an overnight bag with him which he had previously borrowed from Scurlock.

The following day, Zamani and Scurlock drank beer and watched television, and in the evening Zamani, Scurlock, and Aguirre ate dinner and watched the presidential debate on television. Scurlock and Zamani drank beer, and Aguirre drank wine. Scurlock eventually went upstairs to sleep. Scurlock woke up when Aguirre began to yell at him, from the other side of the bed. Zamani went upstairs and tried to claim Aguirre down. After Zamani talked to her,

Zamani and Scurlock went downstairs, watched television, and had another beer.

[4] At some point, Zamani stood up and walked to the kitchen. When he returned to the living room, he struck Scurlock in the face above the eye, and Scurlock began to bleed. Zamani took a knife from his belt area, placed the knife in the area of Scurlock's left ear, and told Scurlock that "he was here to kill [him]." Transcript at 447. Zamani struck Scurlock a couple more times. Scurlock stood up and went to the kitchen to attempt to stop the bleeding. Zamani asked Scurlock what he was doing and "told [Scurlock] to get back into the living room, back on the couch," and Scurlock complied. *Id.* at 448. Zamani continued to hit Scurlock, who went in and out of consciousness and feared for his life.

[5] Aguirre came downstairs, and Zamani grabbed her and pushed her onto the couch next to Scurlock. Scurlock attempted to kick Zamani and told Aguirre to run, and she ran outside through the back sliding glass door to a neighbor's house, knocked on their door, and yelled to call the police because her son was attacking Scurlock and that he had a knife. Meanwhile, Scurlock ran up the stairs, and Zamani chased and caught him as he was entering a bedroom. Zamani pushed him down onto the end of the bed and closed and locked the bedroom door. Zamani "reached down towards the end of the bed into a bag or underneath the bed, pulled out some tape and some more knives and told [Scurlock] he was gonna kill [him] again." *Id.* at 450. Zamani "jump[ed] on top of" him and "had a couple knives in one hand and one knife in the other

hand." *Id.* Scurlock "was just trying to fight him off" and attempted "to grab the two knives in one of [his] hands, tried to break the blades or bend 'em or somethin'." *Id.* at 450-451.

[6]     Officers from the Plainfield Police Department responded to the call and heard a person in the house screaming for help. Officers discovered that the front door and the sliding back door were locked, and they kicked in the front door. They entered the house and attempted to enter the bedroom where Zamani and Scurlock were located but discovered the door was locked. They kicked in the bedroom door and observed Zamani holding a knife to Scurlock's throat. Police feared for Scurlock's life, ordered Zamani to drop the knife and release him, and leveled their firearms at Zamani's head. Zamani rolled onto his back and pulled Scurlock on top of him to create "a human shield." *Id.* at 560, 580. An officer pointed a Taser at Zamani's torso and ordered him to release Scurlock. Zamani initially hesitated and then released him, and he was placed under arrest. When Zamani was moved downstairs, he "appeared to be boasting that [police] were going to shoot him if he wouldn't have picked [] Scurlock up in front of his torso." *Id.* at 587. Scurlock was transported to Methodist Hospital by ambulance, and as a result of the attack he suffered multiple cuts, extensive bruising, and swelling, and received stitches above his eye and ear. The overnight bag was found to contain a pair of jeans, socks, two game controllers, two belts, a necktie, two rolls of packing tape, a rubber mallet, and a pair of scissors.

On October 5, 2012, the State charged Zamani with Count I, aggravated battery as a class B felony; and Count II, battery committed by means of a deadly weapon as a class C felony. On November 20, 2012, the State further charged Zamani with Count III, attempted murder, a class A felony, and alleged that he was an habitual offender.

Meanwhile, on November 15, 2012, Zamani filed a motion for psychiatric examination to determine his competence to stand trial. The court appointed two mental health professionals, Dr. Stephanie Callaway and Dr. George Parker, to examine him. In a report dated January 18, 2013, Dr. Callaway found that Zamani met criteria for schizophrenia manifested by paranoid thoughts and auditory hallucinations, that at the time of the clinical interview his symptoms were causing severe impairment of his thought process and perceptions of reality, and that it was her opinion that Zamani lacked the present ability to understand the proceedings against him or assist in the preparation of his defense. In a report dated February 14, 2013, Dr. Parker found that Zamani reported a long history of auditory hallucinations and was experiencing hallucinations around the time of the interview, and that he had a diagnostic impression of schizophrenia and alcohol abuse. Dr. Parker stated his opinion that Zamani was not currently capable of understanding the legal proceedings or assisting counsel in his defense. On February 21, 2013, the court found Zamani not competent to stand trial and committed him to the Division of Mental Health and Addiction.

[9] In a letter to the trial court dated June 6, 2013, the Superintendent of Logansport State Hospital certified that Zamani had "attained the ability to understand the proceedings and assist in the preparation of his defense." *Id.* at 73. The court initially set an omnibus date for July 3, 2013, but later rescheduled it for November 6, 2013. In July 2013, Aguirre submitted a letter together with health services documentation regarding Zamani's history of mental illness to the court. Zamani sent letters to the court stating in part that his attorney was sabotaging his case and that he feared for the safety of his family, his mother, and his life and would like some of kind of protective services.

[10] At a hearing on January 9, 2014, Zamani's defense counsel requested that Zamani's competence to stand trial be reevaluated, and the court entered an order that Dr. Callaway and Dr. Parker examine his competency. In a report dated January 31, 2014, Dr. Parker stated that his diagnosis of schizophrenia was based in part on Zamani's long history of treatment for psychotic symptoms including hallucinations, that Zamani reported ongoing auditory hallucinations, that he believed the state hospital psychiatrist's report listing a diagnosis of malingering for Zamani was not accurate, and that it was his opinion that Zamani was capable of understanding the legal proceedings but not capable of assisting counsel. In a report dated March 9, 2014, Dr. Callaway found that Zamani demonstrated an advanced understanding of the role of courtroom personnel and the meaning of important legal concepts, he was aware he could not be forced to testify, he provided a coherent and plausible

account of the alleged offense, he identified potential witnesses and evidence in his case, and that he had been offered a plea deal but did not want to accept the terms. The report also stated that "[a]t present [his] psychiatric symptoms are fairly well controlled by his medications," that subtle indicators of mental illness included occasional self-reported hallucinations but this did not impair his ability to communicate or participate in the evaluation, and that it was her opinion that Zamani had sufficient comprehension of the court proceedings and the ability to cooperate and assist in preparation of his defense. Appellant's Appendix at 133. Following a competency hearing, the court issued an order on March 26, 2014, finding that Zamani was competent to stand trial, and setting a jury trial for April 21, 2014. The order found that defense counsel was intimately familiar with the case and had been appointed since its inception.

On April 9, 2014, the State filed a motion in limine, moving the court to order Zamani, his counsel, and any of his witnesses not to mention the following matters:

> 7. Any evidence or argument referring to Defendant's mental state at the time of trial, on the date of offense, or in the past. I.C. 35-36-3-1. Ind. R. Evid. 401.
>
> * * * * *
>
> 12. Any evidence or argument presented referencing Defendant's medication regimen and/or whether Defendant took his medication on the date of the offense, unless the nature of the Defendant's testimony is to elicit the Defendant's ability to fully perceive, remember, and testify regarding the events of the date of the alleged offense. Ind. R. Evid. 401, 404(a); I.C. 35-1-3-5, 35-36-3-1.

Appellant's Appendix at 142-143.

[12] On April 16, 2014, the court held a final pretrial hearing at which it heard argument regarding the State's motion in limine. Defense counsel stated that Zamani had indicated to him "that he believes he's insane," "[t]his was something that [was] first raised . . . April 3rd when we were at New Castle," "[a]t that point, he indicated to me that . . . he hears voices," and "it was at that point that he first raised multiple voices that hadn't been raised in any of his competency evaluations." Transcript at 252-253. The State responded that Zamani's report of hearing voices was not a new allegation of which defense counsel just became aware as it was reflected in the competency reports. The court stated that it was taking defense counsel's request as one for leave to file a notice of an insanity defense and that it would take the request under advisement. The following day, the court entered a final pre-trial order which in part denied Zamani's request for leave to file a belated notice of insanity defense, and an order granting the State's motion in limine.

[13] Zamani's jury trial was held on April 21 through 23, 2014. During closing, the prosecutor commented on the items found in Zamani's overnight bag and argued Zamani brought the items to kill Scurlock, "[t]here's no other explanation for it," that Zamani was the person who attacked Scurlock, and that "[t]here's been no alternative theory." Transcript at 846, 877. The jury found Zamani guilty of aggravated battery, battery, and attempted murder, and it found him to be an habitual offender. Following a sentencing hearing, the court vacated Zamani's convictions for aggravated battery and battery, sentenced Zamani to thirty-five years in the Department of Correction for

attempted murder, and enhanced the sentence by thirty years for the habitual offender finding, for an aggregate sentence of sixty-five years.

## *Discussion*

### I.

The first issue is whether the trial court abused its discretion in denying Zamani's belated request to assert an insanity defense. Ind. Code § 35-36-2-1 provides:

> When the defendant in a criminal case intends to interpose the defense of insanity, he must file a notice of that intent with the trial court no later than:
>> (1) twenty (20) days if the defendant is charged with a felony; or
>> (2) ten (10) days if the defendant is charged only with one (1) or more misdemeanors;
>
> before the omnibus date. However, in the interest of justice and upon a showing of good cause, the court may permit the filing to be made at any time before commencement of the trial.

The omnibus date in this case was ultimately set for November 6, 2013. Thus, under the statute, Zamani was required to file his notice of an insanity defense by October 17, 2013. The court held a final pretrial hearing on April 16, 2014, at which it heard argument on the State's motion in limine, and at the hearing Zamani's counsel verbally indicated that Zamani stated that he believes he is insane.

As Zamani attempted a late filing of the required notice, the trial court had discretion whether to accept it. *See Ankney v. State*, 825 N.E.2d 965, 970 (Ind.

Ct. App. 2005) ("Ankney attempted a late filing of the required notice, and, thus, the trial court had discretion whether to accept it.") (citing *Eveler v. State*, 524 N.E.2d 9, 11 (Ind. 1988) (holding that, after the omnibus date, "the trial court's discretion controlled" and "[s]uch discretion is exercisable upon a showing of good cause by a defendant who has missed the deadline")), *trans. denied*.

[17] The State's motion in limine requested the court to order that Zamani not mention the following matters:

> 7. Any evidence or argument referring to Defendant's mental state at the time of trial, on the date of offense, or in the past. I.C. 35-36-3-1.[1] Ind. R. Evid. 401.[2]

---

[1] Ind. Code § 35-36-3-1(a) relates to competency and provides:

> If at any time before the final submission of any criminal case to the court or the jury trying the case, the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of a defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that ability.
>
> The court shall appoint two (2) or three (3) competent, disinterested:
>
> > (1) psychiatrists;
> >
> > (2) psychologists endorsed by the Indiana state board of examiners in psychology as health service providers in psychology; or
> >
> > (3) physicians;
>
> who have expertise in determining competency.
>
> At least one (1) of the individuals appointed under this subsection must be a psychiatrist or psychologist. However, none may be an employee or a contractor of a state institution (as defined in IC 12-7-2-184). The individuals who are appointed shall examine the defendant and testify at the hearing as to whether the defendant can understand the proceedings and assist in the preparation of the defendant's defense.

[2] Ind. Evidence Rule 401 relates to evidence that is relevant.

* * * * *

12. Any evidence or argument presented referencing Defendant's medication regimen and/or whether Defendant took his medication on the date of the offense, unless the nature of the Defendant's testimony is to elicit the Defendant's ability to fully perceive, remember, and testify regarding the events of the date of the alleged offense. Ind. R. Evid. 401, 404(a);[3] I.C. 35-1-3-5,[4] 35-36-3-1.

Appellant's Appendix at 142-143.

During the April 16, 2014 final pretrial hearing on the State's motion in limine, the following exchange occurred with respect to paragraph 12 of the motion:

> Defense Counsel: Your Honor, with respect to uh number 12, the simple fact is that my client was not taking medication on the night in question. Uh, so with respect to 401 and 404(a), it is inherently relevant. Uh Indiana Code [§ 35-1-3-5] was repealed so I don't even know why that's cited. It's bad law. With respect to [Ind. Code § 35-36-3-1], that boils down to the ability to recall so I think that this motion should not be granted. Um he wasn't on his medications and the truth of the matter is he's still not on medications that he needs today but it's inherently relevant to what happened that night.
>
> * * * * *
>
> State: I would disagree that it was inherently relevant um you know, it's similar to sort of you know (inaudible) intoxication kind of thing. Um the fact of the matter is that the defendant not being on medication, if it rises to the level of criminal culpability then there's a remedy for that and we haven't seen that remedy filed in this particular case. So the basis by which they're trying to get this in is to sort of have some sort of quasi um insanity defense, it doesn't rise to the level of what's required by the statute. That's why it's not relevant um as to whether or not the defendant was in fact on his medication on the

---

[3] Ind. Evidence Rule 404(a) relates to character evidence.

[4] This statutory provision was repealed by Pub. Law No. 2-1995 § 140.

night in question. I mean if they, if that's designed to say that the defendant is somehow, should be somehow held blameless for this particular offense because he wasn't on his medication, well that's not the sufficient standard that's articulated in the insanity statute.

* * * * *

Defense Counsel: . . . and before we get off twelve, your Honor, with respect to insanity, I think that my client uh after all these evaluations, what have you, has indicated to me that he believes he's insane. I don't know that his illness rises to that level. Hence, it has not been filed and addressed with this Court. I would like the opportunity to file a verdict form of guilty, but mentally ill, because I do believe he is mentally ill.

Court: How can you do (that) without complying with an insanity statute? The insanity statute requires me to do that. I mean the insanity statute requires a several step procedure that has to be filed before I can submit a verdict form to allow the jury to consider guilty but mentally ill. It hasn't been done in this case.

Defense Counsel: Your honor, my client would like to state to the Court that he believes he's insane. This was something that first raised uh April 3rd when we were at New Castle. At that point, he indicated to me that uh he hears voices. Is that right, [Zamani]?

Zamani: Yes, sir, also visual stuff.

Court: I've heard the evidence regarding competence to stand trial. That sounds like the road that we're going down again. My question is that if we were gonna file a notice of insanity defense, why didn't we file one April the 4th instead of less than five days before trial or however many days we are before trial, a week less, less than a week before trial?

Defense Counsel: Yeah, I would agree with my client that our focus was more on the evidence, but also your Honor . . .

Court: (Interposing) The focus was more on the evidence? I mean that's exactly what insanity is, is about.

Defense Counsel: Your Honor, it was at that point that he first raised multiple voices that hadn't been raised in any of his competency evaluations.

Court: Now or at that time of the offense? Insanity's at the time of the offense. We're talking about competency. Competency deals with now, competency to stand trial. Insanity's a defense at the time of the offense. This is the first time that he's raised it with you . . .

Defense Counsel: (Interposing) April 3rd.

Court: (Interposing) The case was filed December of 2011 and we're just now raising it.

Defense Counsel: April 3rd, 2014.

Zamani: (inaudible) should never have arised (sic).

State: I believe that, that's issue was contained at one of the competency evaluations as well.

Court: What do you mean?

State: The hearing of voices. I mean to say that, I mean I would object to any sort of filing at this particular um state of where we're at in the process of insanity but specifically to whether or not the defendant was hearing voices, that was stated in one of the competency evaluations a long time ago that the defendant, well now he, so I a mean based on that, this is not a new allegation um that the defense is trying to posit it that they just became aware of. This is something that has been alleged and is even reflected in the competency reports.

Defense Counsel: Due respect, your Honor, but uh I've not had the ability to consult with my client when he's been on the same medication that Dr. Calloway [sic] uh when she observed him he was on. There was something raised I believe in a competency evaluation but it was to my recollection, discredited. So you know, I understand I keep harping on the competency but the simple truth of the matter is I've not been able to interact with my client under the same set of variables that Dr. Calloway [sic] did when she said he was competent. And then that's the only evaluation that has come out to that he was competent, other than the Logansport report where they said they restored his competency.

Transcript at 250-255. A short time later, the following exchange occurred regarding paragraph 7 of the State's motion in limine:

Defense Counsel: . . . I've already explained to the Court how I felt about the third person part of it but along with number seven, we are getting to an issue on the A felony of specific intent. Um and I just believe, you know, that I should be allowed to explore and in trying to talk to my client about his mindset on the date in question, what was going on. With that and I feel somewhat precluded uh with both four[5] and seven from being able to do that, I mean particularly in seven. I don't understand how I couldn't present any argument concerning his mental state uh on the date of offense in a case where we're talking about what his specific intent was that night.

* * * * *

Court: . . . What is number seven designed to address? . . . I mean is it the broader mental health issue or?

State: It is and that was [Ind. Code § 35-36-3-1] . . . that any claim of insanity or mental health on that night or (inaudible) in the past or at the time of trial. . . . It's similar to what we were talking about before in that it's trying . . . to get in sort of sympathetic evidence that doesn't rise to the level of an actual defense. My client's mentally ill but he wasn't insane. Well that's not relevant. If he has a mental illness, if he's bipolar where he suffers from depression whether any of those, um that's the only reason why it would be offered at that point would be to somehow make him a sympathetic person, which clearly is not relevant to whether or not he committed the charges in question.

* * * * *

Court: Just in summary, this is what I'm going to be reviewing this evening. [Defense counsel], I'm taking your request as leave to file a notice of insanity.

Defense Counsel: My client has asked me to raise that so I will this afternoon be working on that.

Court: Well . . .

State: (Interposing) We would object to that.

Court: I understand. I'm gonna make a ruling. I guess my suggestion is not to, I've taken your request as a request for leave to file the notice

---

[5] Paragraph 4 of the State's motion in limine related to evidence of self-defense.

of insanity.  I would not spend the time filing that until I make the ruling on . . . whether or not I'm gonna allow you that leave or not. . . .

*Id.* at 257-258, 262-263, 269.

[19]  The next day, the court issued a final pre-trial order providing in part:

> Defendant's request for leave to file a Notice of Insanity defense is denied.  The case has been pending for approximately 17 months.  There have been 4 prior competency evaluations by 2 different doctors.  Notice of an insanity defense was required to be filed 20 days prior to the omnibus date.  Defendant has not shown good cause for relief from the statute.  Defendant first made the request for leave to file the insanity defense less than 7 days before the start of trial leading into a holiday weekend, leaving the Court an inadequate opportunity to secure the attendance of medical providers to testify at trial as required by statute.

Appellant's Appendix at 179.

[20]  Zamani contends that he made a showing of good cause for asserting a belated notice of insanity and that an insanity defense is necessary in the interest of justice.  Specifically, he argues that the trial had not yet begun, that neither the court nor the State could have been surprised that Zamani's mental illness would be key to his defense, and that from the outset of the proceedings his mental illness was the central issue.  In support of his argument, Zamani points in part to the competency hearings, the various reports from mental health professionals prepared to assess his competency to stand trial, the documents his mother submitted to the court, and the letters he sent to the court.

In arguing that he showed good cause for filing a belated notice, Zamani states: "Unfortunately, it appears that trial counsel was so preoccupied with the issue of Zamani's incompetence, and his ongoing struggle to establish a viable working relationship with his client, that counsel's actual notice of intent to raise an insanity defense was not given until the eve of trial." Appellant's Brief at 20. In arguing that an insanity defense is necessary in the interest of justice, Zamani asserts that "[t]he prolonged consideration of Zamani's competence put everyone involved on notice that his sanity might also be at issue," that "[i]f Dr. Callaway and Dr. Parker had been appointed to assess Zamani's sanity, any delay would likely have been brief" and "[t]he State would not have been prejudiced," "[t]he evidence established that with no apparent provocation, Zamani suddenly and viciously attacked Scurlock," and that, "[w]ithout the insanity defense, there was no explanation for Zamani's strange behavior, and the jury had no option but to find him guilty." *Id.* at 21-22.

The State maintains that Zamani did not make a showing of good cause under the statute and thus the court properly denied his belated notice of insanity, noting that any bases for asserting an insanity defense were well known long before the period for timely filing a notice. The State argues that Zamani first alleged he did not file a timely notice of insanity because he had recently developed auditory hallucinations, but this allegation is contrary to the record and had been discussed in Dr. Callaway's January 18, 2013 report and Dr. Parker's February 14, 2013 report. The State further notes that Zamani also alleged he had shown good cause because he could not tell his attorney his

version of events until April 3, 2014, but that the record indicates Zamani's version of the incident was known well before trial and was set forth in Dr. Parker's February 14, 2013 report and Dr. Callaway's March 9, 2013 report. The State also asserts that, even assuming Zamani was unable to convey his version of events to his attorney, there is no requirement that a defendant's version be known in order to plead insanity. The State further contends that the litigation of Zamani's competency to stand trial highlights that he and his attorney were fully aware of his mental state, he "sought to parade the evidence of his competency in front of the jury to ask them to speculate about whether he was capable of forming the requisite intent," and that "Zamani only opted for attempting to file a belated notice when he realized the trial court would not allow him to present this amorphous defense about his mental illness." Appellee's Brief at 20.

[23] In his reply brief, Zamani argues that "[t]he primary purpose of the insanity statute is to put the State on notice as to the nature of an accused's intended trial defense" and that, "[a]s established by the record in this case, the State was on notice well in advance of trial as to Zamani's psychiatric issues." Appellant's Reply Brief at 2.

[24] The record shows that the possible bases upon which Zamani could allege an insanity defense, if he and his counsel concluded it was warranted, were known to him and his counsel well in advance of the date twenty days before the scheduled omnibus date of November 6, 2013. Zamani was charged on October 5, 2012, and in her January 18, 2013 competency report, Dr. Callaway

found that Zamani met criteria for schizophrenia manifested by paranoid thoughts and auditory hallucinations, and at the time of the clinical interview, he had severe impairment of thought processes and perceptions of reality. Further, in his February 14, 2013 report, Dr. Parker found that Zamani reported a long history of auditory hallucinations, was experiencing hallucinations around the time of the interview, and that Zamani continued to show symptoms of ongoing auditory hallucinations. We also note that five days before the April 21, 2014 trial date, with regard to Zamani's claim of insanity, his defense counsel stated, "I don't know that his illness rises to that level. Hence, it has not been filed and addressed with this Court. I would like the opportunity to file a verdict form of guilty, but mentally ill, because I do believe he is mentally ill." Transcript at 252.

[25] With respect to evidence regarding any mental illness of which Zamani may have suffered at the time of the offense, and in particular evidence related to his statement that he had auditory hallucinations, his defense counsel's statements were simply not true when, at the April 16, 2014 hearing, counsel stated that "[t]his was something that [was] first raised [on] April 3[, 2014] when we were at New Castle," that "[a]t that point, [Zamani] indicated to me that uh he hears voices," and "it was at that point that [Zamani] first raised multiple voices that hadn't been raised in any of his competency evaluations." *Id.* at 252-253.

[26] And, in addition to the reports discussed above, Dr. Parker's January 31, 2014 report stated that Zamani reported ongoing auditory hallucinations, and Dr. Callaway's March 9, 2014 report stated that Zamani described a history of

hallucinations since age seventeen or eighteen years old, that the voices were decreased with his medications but still occurred on a fairly regular basis, at times he described difficulty distinguishing between his hallucinations and his own thoughts, and that his hallucinations were most bothersome when he was alone in his cell.

With respect to the statements of Zamani's defense counsel that he had not had the ability to consult with Zamani while he was on medication and the suggestion that Zamani could not or did not communicate his version of events to his defense counsel, the record shows that Zamani's version of the events of the October 2012 altercation was set forth to an extent in the reports prepared by Dr. Parker and Dr. Callaway. Dr. Parker's February 14, 2013 report stated in part that Zamani said that he estimated he drank alcohol once or twice a month prior to his arrest, that he was last intoxicated on the day of his arrest, and that he believed alcohol "definitely played a role" in the incident. Appellant's Appendix at 65. The report also stated that, when Zamani was asked why he had been arrested, he replied "'cause me and this guy were fighting." *Id.* at 67. Dr. Parker's January 31, 2014 report indicated that, when Zamani was asked about the outcome of the proceedings against him, he replied "I'll probably get found guilty of something, but definitely not attempted murder. I didn't try to kill no one. I was defending a woman that was in distress." *Id.* at 126. Dr. Callaway's March 9, 2014 report stated that Zamani "provided a coherent and plausible account of the alleged offense," that he "identified potential witnesses and evidence in his case," that he "indicated he

had been offered a plea deal but he did not want to accept the terms," that, "[a]ccording to [Zamani], he had read the depositions and he had written out his defense strategies including questions for witnesses," and that he "then asked multiple questions regarding the legal process and how [sic] pros and cons of a bench trial versus a jury trial." *Id.* at 132.

[28] To the extent Zamani points to the various reports prepared to assess his competency to stand trial and the documents submitted by his mother, the documents and other evidence related to his history of mental illness gave him and his defense counsel adequate time to prepare and file a notice of intent to assert an insanity defense if it were desired and merited.

[29] Based upon the record, we cannot say the trial court abused its discretion in determining that Zamani did not demonstrate good cause as to why his late notice should be accepted and thus in denying his belated, verbal motion to assert an insanity defense.[6] *See Ankney*, 825 N.E.2d at 970 (holding that the defendant did not demonstrate and our review of the record did not reveal that the defendant made a showing of good cause as to why his late notice should be accepted, and as such the trial court did not abuse its discretion when it denied the defendant's belated, oral motion to assert an insanity defense) (citing *Eveler*,

---

[6] Because we find the court did not abuse its discretion in finding that Zamani did not demonstrate good cause as to why his late notice should be accepted, we need not address whether the court abused its discretion in denying Zamani's request for leave to file a late notice based on "the interest of justice." *See* Ind. Code § 35-36-2-1 ("However, in the interest of justice *and* upon a showing of good cause, the court may permit the filing to be made at any time before commencement of the trial.") (emphasis added).

524 N.E.2d at 11 (holding the trial court did not abuse its discretion in denying the defendant's belated motion to assert an insanity defense where the defendant did not make showing of good cause as required by statute)); *see also Dudley v. State*, 480 N.E.2d 881, 895 (Ind. 1985) (holding that, since trial had begun and the defendant failed to offer evidence rising to the level of good cause showing why the defense was not previously raised, the trial court properly denied the appellant's motion for psychiatric examination, and noting the trial court had observed that the information learned by the defendant's counsel was previously available and could not be considered newly discovered). Zamani has not demonstrated he is entitled to reversal of his conviction or a new trial on this basis.[7]

## II.

[30] The next issue is whether the prosecutor committed misconduct during closing argument which resulted in fundamental error. Zamani asserts that certain statements by the prosecutor could reasonably have been interpreted by the jury as an invitation to draw an adverse inference from Zamani's failure to testify and that his Fifth Amendment privilege against self-incrimination was violated.

[31] In reviewing a properly preserved claim of prosecutorial misconduct, we determine: (1) whether the prosecutor engaged in misconduct, and if so, (2)

---

[7] While the issue of whether trial counsel rendered ineffective assistance may be raised in a subsequent post-conviction proceeding, that is not the issue before us today. Our review is for an abuse of discretion in the trial court's ruling on Zamani's belated request.

whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected. *Cooper v. State,* 854 N.E.2d 831, 835 (Ind. 2006). Whether a prosecutor's argument constitutes misconduct is measured by reference to case law and the Rules of Professional Conduct. *Id.* The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision rather than the degree of impropriety of the conduct. *Id.*

[32] When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. *Id.* If the party is not satisfied with the admonishment, then he should move for mistrial. *Id.* Failure to request an admonishment or to move for mistrial results in waiver. *Id.* Here, Zamani did not object to the statements of the prosecutor during closing argument. Thus, he has waived the issue.

[33] Where, as here, a claim of prosecutorial misconduct has not been properly preserved, our standard of review is different from that of a properly preserved claim. *Id.* More specifically, the defendant must establish not only the grounds for the misconduct, but also the additional grounds for fundamental error. *Id.* Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. *Id.* It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process . . . present[ing] an undeniable and substantial potential for harm." *Id.*

[34] Zamani argues that the prosecutor impermissibly commented on his failure to testify and points to the following portions of the prosecutor's statements:

> The idea that I talked to you about was why is it that you bring in your overnight bag a mallet, clear packing tape, gloves, necktie? He wasn't going to a ball, he didn't have a job interview. What were the gloves for? What was the mallet for? What was the packing tape for? Did the packing tape just stay in the bag the entire time? No. During the attack and in the photographs, we see that the packing tape is out in the room on the floor. He was attempting to use it. He brought these, these items, the mallet and the packing tape to kill Jim Scurlock. There's no other explanation for it. There's no evidence before you that would suggest otherwise, none.

Transcript at 846. Later, in rebuttal argument, the prosecutor argued: "Even [Aguirre's] own version is that the injuries that were sustained to Jim Scurlock were a result of the attack by the defendant upon him. He's the one that injured Jim Scurlock and brutally attacked him. There's been no alternative theory." *Id.* at 876-877.

[35] Zamani argues that a reasonable jury could have interpreted these statements as a suggestion to infer guilt from Zamani's silence and that this is especially so because the court did not instruct the jury that Zamani was under no duty or obligation to testify and that his failure to testify was not to be considered in determining guilt. The State maintains that it is clear the prosecutor's comments were a response to Zamani's theory of defense, that the comments were in response to Zamani's assertion that he was merely reacting to Scurlock's alleged assault of Zamani's mother, and that Zamani was not merely

reacting to a tense situation but rather brought items with him to the house for the purpose of killing Scurlock.

[36] The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." "In determining whether a prosecutor's comments are error, fundamental or otherwise, we look to see if the comments in their totality are addressed to the evidence rather than the defendant's failure to testify." *Carter v. State,* 686 N.E.2d 1254, 1262 (Ind. 1997). If so, there are no grounds for reversal. *Id.* Arguments that focus on the uncontradicted nature of the State's case do not violate the defendant's right to remain silent. *Id.* (citing *Isaacs v. State,* 673 N.E.2d 757, 764 (Ind. 1996)).

[37] Zamani's defense was that he did not plan the assault, he was not acting with specific intent to kill, and that he was reacting to a situation. The prosecutor commented on the various items in Zamani's overnight bag and argued that Zamani brought the items to his mother's house to use to kill Scurlock. The arguments of the prosecutor addressed the defense's theory of the case, and attempted to focus on the State's evidence and lack of evidence contradicting the State's theory of the case. Based upon the record, we conclude that the prosecutor's comments in their totality were addressed to the evidence rather than Zamani's failure to testify. *See Callahan v. State*, 527 N.E.2d 1133, 1137 (Ind. 1988) (noting that a remark about the lack of an explanation by the defense concerning otherwise incriminating evidence against the accused is proper so long as the prosecutor focuses on the absence of evidence to

contradict the State's evidence and not the accused's failure to testify); *Hancock v. State*, 737 N.E.2d 791, 798 (Ind. Ct. App. 2000) (holding the prosecutor's statements were not an inappropriate comment on the defendant's failure to testify but rather a comment on the defendant's failure to present convincing evidence to support his defense).

[38] But even if we assumed misconduct, we are not persuaded that the comments during the prosecutor's argument created "an undeniable and substantial potential for harm." *Cooper,* 854 N.E.2d at 835. The challenged comments were brief in relation to the closing argument as a whole. The evidence related to Zamani's assault of Scurlock in the downstairs living room and upstairs bedroom, the contents of his overnight bag, and his statements to Scurlock that he was going to kill him. Further, the jury was instructed that Zamani was "not required to present any evidence to prove his innocence or prove or explain anything." Transcript at 830. The jury was also instructed that "statements by the attorneys are not evidence." *Id.* at 834. Given the evidence presented at the trial and the jury instructions, we conclude that any prejudicial impact caused by the prosecutor's statements was minimal and that the prosecutor's statements do not constitute fundamental error. Zamani is not entitled to a new trial on this basis.

## Conclusion

[39] For the foregoing reasons, we affirm Zamani's conviction for attempted murder.

Affirmed.

Bailey, J., concurs.

Robb, J., dissents with separate opinion.

| Shaheen Zamani, | Court of Appeals Case No. |
| --- | --- |
| *Appellant-Defendant,* | 32A05-1406-CR-264 |
| v. | |
| State of Indiana, | |
| *Appellee-Plaintiff.* | |

**Robb, Judge, dissenting.**

I acknowledge that Zamani did not timely file a notice of intent to assert an insanity defense by the terms of Indiana Code section 35-36-2-1. But Zamani's mental health was clearly an issue from the outset of this prosecution and the trial had not yet started when he made his request. Well after the omnibus date, one of the two court-appointed mental health professionals submitted a report opining that Zamani was not capable of understanding the legal proceedings or assisting his counsel, substantiating his alleged mental state. The assertion of an insanity defense could not have come as a shock to the

State, and would not have prejudiced it, as no additional witnesses would have needed to be procured.

[42] Because I believe Zamani showed good cause for allowing the filing of a notice of intent to assert an insanity defense and that such filing would be in the interest of justice,[8] I would hold that the trial court abused its discretion in denying the notice to assert an insanity defense and remand for a new trial.

---

[8] Not only would such allowing the insanity defense to be raised at trial allow the jury to evaluate all the relevant evidence, disallowing it only because it was filed late invites an ineffective assistance of trial counsel claim in a post-conviction relief proceeding.