

FILED
Apr 24 2026, 1:07 pm
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

# IN THE
# Indiana Supreme Court

Supreme Court Case No. 25S-CR-231

## Kathryne Tillett,
*Appellant-Defendant*

—v—

## State of Indiana,
*Appellee-Plaintiff*

Argued: December 4, 2025 | Decided: April 24, 2026

Appeal from the Floyd Circuit Court
No. 22C01-2202-F1-212

The Honorable Justin B. Brown, Judge

On Petition to Transfer from the Indiana Court of Appeals
No. 24A-CR-01413

**Opinion by Justice Massa**

Chief Justice Rush and Justices Slaughter and Molter concur.
Justice Goff concurs in parts II and III and dissents in part I with
separate opinion.

**Massa, Justice.**

A state statute sets a deadline for filing a notice of insanity as a defense in a criminal case. A court may, however, upon a showing of good cause, allow a defendant to file a late notice.

The appellant in this case asks the Court to find the trial court abused its discretion by denying her belated insanity defense request. As she failed to provide good cause for her extensive delay, we decline to do so. We also reject her arguments that the evidence presented was unreliable and inadmissible under the Protected Person Statute and that her sentence is inappropriate in light of the nature of the crime and character of the offender. Accordingly, we affirm the trial court.

## Facts and Procedural History

Kathryne Tillett was charged with two counts of child molesting for alleged conduct with her two young children E.W. and I.B. In January 2022, then seven-year-old E.W. approached her first-grade teacher and asked her to write a note to her mother, Tillett. E.W. said, "I need you to tell my mom to quit hurting me." Tr. Vol. III at 105–06. When asked what she meant, E.W. stated that "she hurts me down there." *Id.* at 107. E.W. then explained "she puts her finger inside of me and makes me bleed." *Id.* Her teacher was aware that E.W. had a younger sister, who was three years old at the time, so she asked whether her mother did the same thing to I.B. E.W. responded that Tillett "touches her too, but she doesn't make her bleed." *Id.* E.W. told her teacher that this was occurring on a daily basis before the children would take a bath or shower.

Tillett was arrested and charged with two counts of child molestation as Level 1 felonies. The trial court held a hearing and set the omnibus date (the procedural deadline for any pretrial proceedings) for April 26, 2022. On two occasions the trial court granted a continuance after Tillett's counsel said that he was awaiting the results of a psychological evaluation.

In February 2023, in Tillett's related Child in Need of Services (CHINS) case, Dr. Amanda Pfeffer diagnosed Tillett with schizophrenia, stimulant use disorder, borderline intellectual functioning, and a personal history of childhood sexual abuse.

Then again, in April 2023, Dr. James Anderson filed a forensic evaluation which concluded that Tillett had a mental illness. He observed her engaging in behaviors typical of psychosis, in particular "she appeared to have a difficult time sustaining attention to [his] questions, as if distracted by internal stimuli." Appellant's Appendix Vol. II at 71. He diagnosed her with "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder and Methamphetamine Use Disorder." *Id.* at 72. He opined that she could understand the proceedings against her but was not "presently capable of assisting in the preparation of her defense." *Id.* at 73. His report concluded that there was a good chance she could be restored to competency with treatment.

However, in July 2023, a different doctor, Dr. Heather Henderson, concluded that Tillett could assist and participate in her defense, had basic understanding of the court proceedings, and was "clearly competent to stand trial." *Id.* at 86.

In September 2023, at a competency hearing, Tillett presented testimony of Drs. Anderson and Henderson. Dr. Anderson stated that Tillett had difficulty paying attention to her questions, and that she was distracted by "internal stimuli," which can include "voices in the head" and "intrusive thoughts." *Id.* at 46. Finding Tillett lacked the ability to understand the proceedings and to assist in the preparation of a defense, the trial court continued the trial date. Tillett was committed to the Indiana Division of Mental Health and Addiction for competency restoration services.

In January 2024, the Superintendent of the Indiana Neurodiagnostic Institute and Advanced Treatment Center filed a letter based on a report by Dr. Anjum Ara, concluding Tillett had gained competency and "can

now understand the court proceedings and assist in preparing her defense." *Id.* at 108.

Based on this report, the court scheduled a final pretrial conference date and set a jury trial for April 15, 2024. However, on April 3, 2024, just twelve days before trial, Tillett's counsel filed a Motion to Permit a Belated Notice of Insanity Defense arguing that though he had concerns about her mental state, "it was not until [Tillett] completed a psychological evaluation through a related CHINS case[s] that the reality of her severe mental health needs and their potential impact on this case began to take focus" and she only "completed that psychological evaluation through a provider selected by the [DCS] . . . on December 2, 2022, with the report completed on February 25, 2023." *Id.* at 139–40.

Tillett's counsel also notified the court that he served as her counsel on the CHINS cases and was "unable to have a logical, coherent conversation with [Tillett] at any point in 2023." *Id.* at 140. He stated that even following her commitment and return to Floyd County Jail, Tillett "is still incapable of having a meaningful, substantive conversation about the facts, evidence, and legal issues in this case." *Id.* at 140–41.

The trial court entered an order denying Tillett's motion. The court mentioned "the lack of evidence presented regarding [Tillett's] mental health history and diagnoses," "the extremely belated timing of the request," "the absence of an acceptable explanation for the timing," and "the risks of [Tillett] again decompensating while in custody." *Id.* at 202.

A jury found Tillett guilty of Level 1 felony molest of both children. At sentencing, the caseworker testified that during a clinical interview and assessment in Tillett's CHINS case, Tillett was also diagnosed with schizoaffective disorder, posttraumatic stress disorder, and "other stimulant use disorder in remission." Tr. Vol. VI at 16. The court sentenced Tillett to forty years for each offense to be served consecutively for an aggregate sentence of eighty years.

In a split decision, a majority of the Court of Appeals reversed and remanded, finding the trial court abused its discretion in denying Tillett's motion to permit the belated notice of insanity defense. *Tillett v. State*, 255 N.E.3d 1235 (Ind. Ct. App. 2025). Chief Judge Altice dissented, finding no abuse of discretion and no showing of good cause. *Id.* at 1241 (Altice, C.J., dissenting). The State sought transfer, which we granted, thereby vacating the Court of Appeal's decision. Ind. Appellate Rule 58(A).

## Standard of Review

We review a trial court's decision to deny a belated motion to assert an insanity defense for an abuse of discretion. *Zamani v. State*, 33 N.E.3d 1130, 1135, 1141 (Ind. Ct. App. 2015), *trans. denied*. A trial court abuses its discretion only if its decision is clearly against the logic and effect of the facts and circumstances before it. *Nicolson v. State*, 963 N.E.2d 1096, 1099 (Ind. 2012).

## Discussion and Decision

### I.  Tillett Made No Showing of Good Cause for her Delayed Insanity Defense

Tillett argues that the trial court abused its discretion in denying her belated request to assert an insanity defense. Under Indiana Code Section 35-36-2-1, a defendant in a felony case must file a notice of intent to assert an insanity defense no later than 20 days **before** the omnibus date, or 10 days before the omnibus date for misdemeanor charges. "However, in the interest of justice and *upon a showing of good cause*, the court may permit the filing to be made at any time before commencement of the trial." *Id.* (Emphasis added).

While the statute grants a trial court discretion to permit filing of a notice of insanity defense at any time before commencement of a trial,

"such discretion is exercisable upon a showing of good cause by a defendant who has missed the deadline." *Eveler v. State*, 524 N.E.2d 9, 11 (Ind. 1988). The statute itself does not define "good cause," leaving the term to judicial interpretation.

In this case, no good cause was presented. As Tillett was charged with a felony, and the omnibus date in this case was set for April 26, 2022, by statute she was required to file her notice of an insanity defense by April 6, 2022. Tillett sought leave to file belated notice nearly two years after the omnibus date and twelve days before trial commenced. Having missed the deadline, she was required to show good cause for the delay.

The trial court did not abuse its discretion in denying her belated motion. While we agree there was good cause for her missing the original statutory deadline, as she had not been psychologically evaluated at that point, we find no good cause for the significant delay *after* she had been seen. There were at least two doctors who testified to possible bases for the insanity defense that were known to defendant and her counsel which were not acted upon in reasonable time. Tillett obtained psychological evaluations in February 2023 and April 2023, yet despite this, she still waited until April 2024 before filing her motion. By the time the belated motion was filed, the case had been pending for more than two years, trial had been re-scheduled, and the first schizophrenia diagnoses were more than a year old. Both medical reports indicated Tillett may have met the criteria for schizophrenia as well as other psychotic disorders. These documented reports clearly provided "defense counsel adequate time to prepare a notice of intent to assert an insanity defense if it were desired and merited." *Zamani*, 33 N.E.3d at 1141. Yet Tillett's motion to assert an insanity defense was only filed two weeks prior to trial. With no "acceptable explanation for the timing," Appellant's Appendix Vol. II at 71–72, we cannot disagree with the trial court's findings.

The trial court rejected the defense on the grounds that the defense was not timely filed, that there was no good cause for the extensive delay, and that it would not be in the interest of justice to allow it. We agree.

Therefore, we find the trial court did not abuse its discretion in denying Tillett's motion.

## II. The Children's Statements were Reliable and Admissible

The general rule against hearsay only excludes hearsay "unless these rules or other law provides otherwise." Indiana Evidence Rule 802. The Protected Person Statute provides otherwise. Ind. Code § 35-37-4-6. The statute establishes a framework for admitting out-of-court statements by certain people, including children under fourteen years of age, in criminal prosecutions for certain offenses. *Id.* at § -(a)(2),(5),(c)(1).

A victim's otherwise inadmissible statement "concern[ing] ... a material element of [the] offense," *id.* § - (e)(2), may be admitted for its truth against the accused if certain conditions are satisfied: if the trial court finds the child is unavailable to testify at trial because testifying would cause the child serious emotional distress such that the child cannot reasonably communicate; *id.* § (f)(2)(B)(i); if the trial court finds the child's statement sufficiently reliable after a hearing attended by the child; *id.* § (f)(1)(B); and if the child was available for cross-examination at the hearing. *Id.* § (g).

As a predicate for admission under the Protected Person Statute, the trial court is required to find in a hearing that "the time, content, and circumstances of the statement . . . provide sufficient indications of reliability." *Id.* § (f)(1). This reliability determination is critical because it serves as "the sole basis for finding the trustworthiness that permits introduction of otherwise inadmissible hearsay." *Pierce v. State*, 677 N.E.2d 39, 44 (Ind. 1997). In the end, however, "the decision to admit or exclude evidence is within a trial court's sound discretion and is afforded great deference on appeal." *Carpenter v. State,* 786 N.E.2d 696, 702 (Ind. 2003). The trial court abuses its discretion by ruling in a way clearly against the

logic and effect of the facts and circumstances before it, or by misinterpreting the law. *Id.* at 703.

In evaluating the time, content, and circumstances of the statement for sufficient reliability, the trial court should consider:

> whether there was significant opportunity for coaching, the nature of the questioning, whether there was a motive to fabricate, use of age[-]appropriate terminology, and spontaneity and repetition. Lengthy and stressful interviews or examinations preceding the statement ... may cast doubt on [its] reliability ... sufficient to preclude its admission. There are undoubtedly many other factors in individual cases. However, this list is non-exhaustive and courts have emphasized "there are undoubtedly many other factors in individual cases."

*Pierce*, 677 N.E.2d at 44. (internal citations omitted). Tillett contends the trial court abused its discretion by admitting her children's forensic interviews into evidence under the Protected Person Statute. More specifically, she argues the children's statements made during their forensic interviews are inadmissible because they lacked sufficient indicia of reliability under subsection 6(f)(1) (requiring "that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability"). We disagree.

The allegations originated with E.W., who was interviewed first by a qualified forensic interviewer with no prior knowledge of the allegations of abuse at issue. E.W. was interviewed less than twenty-four hours after she had made her spontaneous disclosure to her first-grade teacher that Tillett had been hurting her. The time between the initial disclosure and the interview was not significant enough to create an opportunity for coaching. The delay was not long enough to likely create the potential for an adult to plant a story or cleanse one. *Pierce*, 677 N.E.2d at 45.

Moreover, there has been no suggestion of any motive to fabricate. Between telling her teacher about the abuse and her forensic interview at the Child Advocacy Center, E.W. spent the night with her maternal grandmother who was told, as part of a safety plan, not to discuss the allegations with the children. Their maternal grandmother did not speak to them about the matter prior to the children being interviewed. At their interviews, both children used age-appropriate language which shows their statements were less likely to have been fabricated or coached. Their maternal grandmother also later testified at trial that E.W. was seven years old and able to differentiate between a truth and a lie. While I.B. has had some learning difficulties, during interviews she was able to demonstrate physically how she was molested. The children's disclosures were consistent with the spontaneous disclosure E.W made to her teacher, which weighs in favor of it being accurately repeated. Prior to each interview, the children did not have any lengthy or stressful interviews on this matter; their conversations with other adults at most lasted a few minutes.

The testimony of E.W.'s first-grade teacher recounting her statements and the videotape interview exhibited sufficient indications of reliability required by the Protected Person Statute. Based on the record before us, we do not find the trial court abused its discretion by finding the statements of these children reliable and therefore, admissible under the statute.

## III.   Tillett's Eighty-Year Sentence is Not Inappropriate

Tillett further argues that her sentence is inappropriate in light of the nature of the offense and her character. She asks us to revise her sentence. We decline to do so.

The Indiana Constitution authorizes appellate review and revision of a trial court's sentencing decision. *See* Ind. Const. art. VII, §§ 4, 6. Indiana

Appellate Rule 7(B) establishes a standard of review intended to guide appellate courts when reviewing a defendant's sentence. *Cramer v. State*, 240 N.E.3d 693, 698 (Ind. 2024). Appellate Rule 7(B) empowers appellate courts to "revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." App. R. 7(B).

Determining a sentence's appropriateness "turns on our sense of the culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *McCain v. State*, 148 N.E.3d 977, 985 (Ind. 2020). We generally defer to the trial court's decision, and our goal is to determine whether the defendant's sentence is inappropriate, not whether some other sentence would be more appropriate. *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012). "Our role is to 'leaven the outliers,' which means we exercise our authority only in 'exceptional cases.'" *Russell v. State*, 234 N.E.3d 829, 856 (Ind. 2025) (quoting *Faith v. State*, 131 N.E.3d 158, 159 (Ind. 2019)), *cert. denied*, 145 S. Ct. 424 (2024). It is up to the defendant to "persuade the appellate court that his or her sentence has met th[e] inappropriateness standard of review." *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006). And given that sentencing "is principally a discretionary function in which the trial court's judgment should receive considerable deference[,]" a trial court's sentencing decision will generally prevail "unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015).

Tillett argues that the imposition of the "maximum possible sentence" was inappropriate in light of her character. Appellant's Brief at 25. In considering the nature of the offense, we first look at the advisory sentence for the crime. *McHenry v. State*, 152 N.E.3d 41, 46 (Ind. Ct. App. 2020). The advisory sentence is the starting point the Legislature selected

as appropriate for the crime committed. When a sentence deviates from the advisory sentence, "we consider whether there is anything more or less egregious about the offense as committed by the defendant that distinguishes it from the typical offense accounted for by our legislature when it set the advisory sentence." *Madden v. State*, 162 N.E.3d 549, 564 (Ind. Ct. App. 2021).

The sentence for a Level 1 felony typically ranges from twenty to forty years, with an advisory sentence of thirty years. Ind. Code § 35-50-2-4(b). But the maximum aggregate sentence Tillett faced for her two Level 1 felony convictions was 100 years. *See id.* at § -4(c) ("A person who commits a Level 1 felony child molesting offense described in I.C. 35-42-4-3(a)(1) shall be imprisoned for a fixed term of between twenty (20) and fifty (50) years, with the advisory sentence being thirty (30) years."). Here, the trial court did not impose the maximum sentence. The court imposed forty-year, consecutive sentences, instead of fifty. Therefore, Tillett is wrong that she received the "maximum possible sentence." Appellant's Brief at 25.

Tillett also contends the nature of her offenses were "not egregious in a manner not already inherent in the nature of such child molesting offenses." *Id.* "But crimes against children are particularly contemptible." *Pierce v. State*, 949 N.E.2d 349, 352 (Ind. 2011). Tillett here was digitally penetrating her very young daughters every day before bathtime. E.W. even described hearing her younger sister cry and stated Tillett "pokes [I.B.] a lot, a lot, and a lot," when changing her diaper. Tr. Vol. IV at 139. E.W. also described pain and bleeding from both her vagina and anus. Her teacher testified that on occasion, E.W. would say she was bleeding at school after using the bathroom. Tr. Vol. III at 105. None of this would have been revealed if E.W. did not have the courage to speak up to her first-grade teacher and ask her to write a note to Tillett to "quit hurting me." *Id.* at 107. Tillett abused her position of trust by molesting her seven- and three-year-old daughters. *See Monroe v. State*, 886 N.E.2d 578, 580 (Ind. 2008) (considering the violation of position of trust between a defendant and a victim when weighing the nature of the offense). The abuse these

children suffered at the hand of their own mother is abhorrent and we cannot say it is undeserving of the aggravated and consecutive sentences given.

As for the character of the offender, Tillett's argument rests on her mental health. While there is enough evidence to persuade us that Tillett suffers from some mental illness, it is not clear that it motivated her offenses. Tillett appears to have shown a complete lack of remorse throughout these proceedings, she also appears to lack empathy towards her children and even goes as far as blaming E.W. (Tillett told her probation officer that she believes E.W. was the one inappropriately touching her younger sister). That she is blaming her daughter for the conduct shows she understands the charges against her, and we do not find that Tillett's mental health issues significantly lessen her moral culpability. Moreover, Tillett has not provided evidence to support a virtuous character or established a nexus between her mental health issues and the crimes committed.

Tillett has failed to demonstrate that her sentence is inappropriate in light of the specific factors considered by the trial court that distinguished her offenses from those committed by defendants in other cases. In short, her sentence is not inappropriate and should not be revised.

## Conclusion

Tillett has shown no good cause for her belated insanity defense motion and no error in the admission of evidence or inappropriateness of her sentence. We therefore affirm the trial court.

Rush, C.J., and Slaughter and Molter, JJ., concur.
Goff, J., concurs in parts II and III and dissents in part I with separate opinion.

ATTORNEY FOR APPELLANT

Matthew J. McGovern

Fishers, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita

Indiana Attorney General

George P. Sherman

Supervising Deputy Attorney General

Indianapolis, Indiana

Kelly A. Loy

Deputy Attorney General

Indianapolis, Indiana

**Goff, J., concurring in part and dissenting in part.**

I take no issue with, and thus concur in, the Court's holdings in Parts II and III of its opinion. However, I respectfully dissent from the Court's holding that Tillett failed to show good cause to justify her belated insanity defense.

When a defendant charged with a felony seeks to raise an insanity defense, she must first file a notice of intent with the trial court no later than twenty days before the omnibus date. Ind. Code § 35-36-2-1. Despite this filing deadline, the trial court may, "in the interest of justice and upon a showing of good cause," permit the filing "at any time" before trial begins. *Id.* Although Tillett showed "good cause" for having missed the "original statutory deadline," due to the lack of psychological evaluations "at that point" in the proceedings, the Court finds "no good cause for the significant delay *after*" her evaluations in February and April 2023. *Ante*, at 6. Both evaluations, the Court explains, indicate that "Tillett may have met the criteria for schizophrenia as well as other psychotic disorders" and both were filed more than a year before defense counsel filed a belated notice, ostensibly giving him ample time to evaluate Tillett. *Id.*

But even if defense counsel had known of Tillett's mental-health problems early on, he had little opportunity to thoroughly gauge whether she suffered from a mental disease or defect *at the time she committed the offenses*, as the insanity statute requires. *See* I.C. § 35-41-3-6(a) (specifying that a "person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct *at the time of the offense*") (emphasis added). The competency proceedings, which consumed nearly a year of the case, focused not on Tillett's "mental soundness at the time of the events" for which she stood charged, but, rather, on her "mental condition *at the time of trial*." *See* 12 Robert Lowell Miller, Jr., Ind. Practice § 601.104, at 760 (4th ed. 2016) (emphasis added); *see also Grecco v. State*, 240 Ind. 584, 589 (1960) (stressing that "a person affected with insanity or mental illness" may still act as a "competent witness depending entirely on his or her mental condition as determined by the court *at the time of trial*") (emphasis added). And the State itself, at the hearing on Tillett's belated motion,

acknowledged that the trial court had "not appointed evaluators to look specifically at her ability to appreciate the wrongfulness of her conduct at the time of the offense." Tr. Vol. 2, p. 68.

To be sure, defense counsel admitted to having developed a "concrete understanding" of Tillett's mental condition when—more than a year before trial—DCS issued its psychological evaluation diagnosing Tillett with schizophrenia in the related CHINS case. *Id.* at 65. But even then, defense counsel was "unable to have a logical, coherent conversation with [Tillett] at any point in 2023." App. Vol. 2, p. 140. And even after she was deemed to have regained competency in late January 2024, Tillett was, as defense counsel stressed in his motion, "still incapable of having a meaningful, substantive conversation" about the case, effectively preventing him from "adequately and properly determin[ing] the appropriateness of seeking a modification of [Tillett's] plea." *Id.* at 140–41. Indeed, until "steps were taken to address whether [Tillett] could even stand trial from a basic competency standpoint," the motion argued, defense counsel lacked the ability to determine "whether an insanity defense was appropriate" or whether it was a "misread caused by untreated symptoms in need of intervention." *Id.* at 141.

The State itself acknowledges that Tillett may "not have [had] enough information to consider pursuing an insanity defense until the final competency report was filed in January 2024." Pet. to Trans. at 15–16. And while the State insists that defense counsel had "multiple opportunities after competency restoration to address the issue with Tillett and the trial court well in advance of the trial date," *id.* at 16, the fact is that defense counsel *had* made clear his intentions of raising an insanity defense *several weeks prior* to filing the belated notice, App. Vol 2, p. 201 (acknowledging that counsel "had made the State and the Court aware" of the pending motion "sometime [in] the weeks prior" to filing). So, it's not as if the trial court was exercising its discretion to eliminate the "element of surprise," as the State suggests. *See* Reply in Support of Pet. to Trans. at 5.

Finally, and perhaps most importantly, Tillett's mental health was clearly an issue from the outset of her prosecution. As such, the "assertion of an insanity defense could not have come as a shock to the State," and

any prejudice it may have sustained would have been minimal, especially given the children's exemption from testifying as witnesses under the Protected Persons Statute. *See Zamani v. State*, 33 N.E.3d 1130, 1144 (Ind. Ct. App. 2015) (Robb, J., dissenting), *trans. denied*.

For the reasons above, I concur in the Court's holdings in Parts II and III of its opinion but dissent from the Court's holding in Part I that Tillett failed to show good cause to justify her belated insanity defense.