

**FILED**

Jul 28 2016, 9:25 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Mark Small
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Paula J. Beller
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Anthony J. Wampler, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | July 28, 2016 <br><br> Court of Appeals Cause No. <br> 14A05-1510-CR-1606 <br><br> Appeal from the Daviess Superior Court <br><br> The Honorable Dean A. Sobecki, Judge <br><br> Trial Court Cause No. <br> 14D01-1407-FB-714 |

**Barnes, Judge.**

## Case Summary

[1] Anthony J. Wampler appeals his sentence for two counts of Class B felony burglary and his status as an habitual offender. We affirm.

## Issue

Wampler raises one issue, which we restate as whether his sentence is inappropriate in light of the nature of the offenses and the character of the offender.

## Facts

Wampler went to elementary school with K.S. in the early 1970's. In May and June 2014, K.S. began to find unusual items at his house in Washington. He found a handwritten note in his mailbox that said, "hey, this is A.J., haven't seen you in a long time. Would like for you to give me a call." Tr. p. 66. The note included a phone number. Several cards, a bottle of alcohol, and an axe, which had previously been taken from K.S.'s back yard, were also left on his front porch.

In late June 2014, Wampler entered K.S.'s home during the night through a laundry room window. Wampler later admitted that he "crept around" K.S.'s house. State's Ex. 4, p. 13. Wampler said, "I think he was there in bed. And I think I could have reached out and touched him." *Id.* at 12. Wampler took a beer from K.S.'s refrigerator and took an inspirational quote that was posted on the refrigerator. The next morning, K.S. noticed that a window screen was broken in his house, and the window was cracked open. K.S. found a note in his house that said, "I love you. Sorry about the screen. There are too many as it is." State's Ex. 1. K.S. reported the incident to the police.

K.S. thought that "A.J.," who left the note in his mailbox, might be responsible for the break in. A co-worker helped him find Wampler's Facebook page, where Wampler had posted that he was drinking a beer stolen from a friend's refrigerator and that he had taken an inspirational quote from the refrigerator door too. K.S. called the number left on the note in the mailbox, and Wampler returned his call. Wampler admitted to "creeping around [K.S.'s] house." Tr. pp. 72-73. Wampler later admitted that he had been following K.S. since approximately 1995.

The State charged Wampler with two counts of Class B felony burglary and one count of Class D felony residential entry.[1] The State also alleged that Wampler was an habitual offender. Wampler's attorney filed a motion for a psychiatric evaluation to determine if he was competent to stand trial, and in November 2014, the trial court found that Wampler was incompetent. Wampler was certified as competent in February 2015. After a bench trial, the trial court found Wampler guilty as charged and found that Wampler was an habitual offender. Due to double jeopardy concerns, the trial court entered judgment of conviction on only the burglary verdicts and sentenced Wampler to concurrent terms of eighteen years on each conviction enhanced by fifteen years for his

---

[1] The State originally charged Wampler with two counts of Level 4 felony burglary and one count of Level 6 felony residential entry. The State later amended the charging information because the offenses were committed prior to the July 1, 2014 statutory change.

status as an habitual offender.  Wampler received an aggregate sentence of thirty-three years.  Wampler now appeals.

## Analysis

[7] Wampler argues that his thirty-three-year sentence is inappropriate.  Indiana Appellate Rule 7(B) provides that we may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find that the sentence is inappropriate in light of the nature of the offenses and the character of the offender.  When considering whether a sentence is inappropriate, we need not be "extremely" deferential to a trial court's sentencing decision. *Rutherford v. State*, 866 N.E.2d 867, 873 (Ind. Ct. App. 2007).  Still, we must give due consideration to that decision.  *Id.*  We also understand and recognize the unique perspective a trial court brings to its sentencing decisions.  *Id.*  Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[8] The principal role of Rule 7(B) review "should be to attempt to leaven the outliers, and identify some guiding principles for trial courts and those charged with improvement of the sentencing statutes, but not to achieve a perceived 'correct' result in each case." *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008).  We "should focus on the forest—the aggregate sentence—rather than the trees—consecutive or concurrent, number of counts, or length of the sentence on any individual count." *Id.*  When reviewing the appropriateness of

a sentence under Rule 7(B), we may consider all aspects of the penal consequences imposed by the trial court in sentencing the defendant, including whether a portion of the sentence was suspended. *Davidson v. State*, 926 N.E.2d 1023, 1025 (Ind. 2010).

[9] Wampler argues that his sentence is inappropriate because he only took one beer and an inspirational quote from K.S.'s refrigerator door, his criminal history is minimal, and he has mental health problems. Also, according to Wampler, if he had committed his offenses on or after July 1, 2014, he "no longer could have had his sentence enhanced because of prior Class D felony convictions." Appellant's Br. p. 8. Wampler requests that we remove the fifteen-year habitual offender enhancement.

[10] With respect to the habitual offender enhancement, Wampler mistakenly argues that we should apply the law regarding habitual offenders that took effect on July 1, 2014. Under the revised statute, Wampler would not have qualified as an habitual offender because both of the prior felonies were Class D felonies. *See* Ind. Code § 35-50-2-8(b). However, Wampler's offenses were committed at the end of June 2014. We have previously held that the doctrine of amelioration does not apply to these revisions to the habitual offender statute. *See Cox v. State*, 38 N.E.3d 702, 704 (Ind. Ct. App. 2015). The trial court was correct in applying the habitual offender statute in effect at the time Wampler's offense was committed, even if it was only a few days before the amendment.

The nature of the offense is that Wampler burglarized K.S.'s house while K.S. was sleeping. Wampler minimizes the incident by arguing that he only took a beer and a paper that was on the refrigerator, but the incident was far more disturbing. Wampler had been watching K.S. for almost twenty years. He took an axe from K.S.'s back yard and later left it on his porch. He repeatedly left notes for K.S. He finally worked up to breaking into K.S.'s house and stood in K.S.'s bedroom watching him sleep. Wampler admitted that he wanted to touch K.S. Although the items taken in the burglary were of little value, the offense was quite disturbing.

As for the character of the offender, we acknowledge that forty-nine-year-old Wampler has struggled with mental health problems for many years. He received psychiatric treatment as a teenager and in his twenties. However, he chose to use no psychiatric medications from 1995 until he was placed in an inpatient facility during this case. As an adult, Wampler was convicted of Class D felony criminal mischief in 1995, Class A misdemeanor possession of drug paraphernalia in 2013, Class A misdemeanor battery resulting in bodily injury in 2013, and Class D felony criminal trespass in 2013. Wampler also had a pending charge for Class B misdemeanor criminal mischief.

We acknowledge Wampler's mental health problems. However, given the disturbing nature of Wampler's offenses and his criminal history, we cannot say that his sentence is inappropriate.

# Conclusion

[14] Wampler's sentence is not inappropriate in light of the nature of the offense and the character of the offender. We affirm.

[15] Affirmed.

Vaidik, C.J., concurs.

Mathias, J., dissents with opinion.

| | |
|---|---|
| Anthony J. Wampler, | Court of Appeals Case No. |
| *Appellant-Defendant,* | 14A05-1510-CR-1606 |
| v. | |
| State of Indiana, | |
| *Appellee-Plaintiff.* | |

**Mathias, Judge, dissenting**

[16] Because I believe that Wampler's obvious and serious mental illness should have resulted in his civil commitment, not his incarceration, I respectfully dissent.

### *Facts and Procedural History*

[17] The majority accurately describes the historical facts of this case. Even the majority's version of the facts amply demonstrates that Wampler has always suffered from severe mental health problems. However, a more detailed view of the record even more clearly demonstrates the true extent of Wampler's mental illness.

This case starts in the early 1970s, when Wampler and K.S. attended elementary school together. Wampler had a crush on K.S. that eventually became an obsession. Wampler explained his obsession with K.S. to the police by stating, "[T]o me, you know, you look up male beauty and there's [K.S.]. . . He's like a portrait in the flesh." Ex. Vol., State's Ex. 4, p. 29. He also compared K.S. to a "piece of art." *Id.* at 30.

In 1995, Wampler began to keep a notebook on K.S. that contained yearbook photographs of K.S., clippings of newspaper articles about K.S., and notes by Wampler, some of them written to K.S. but never sent. Included in this notebook is a newspaper clipping of the newspaper in which K.S.'s marriage license was listed, circled with a heart. Also included are several bizarre drawings and diagrams, one of which we reproduce for illustrative purposes below:



Ex. Vol., State's Ex. 1, p. 46. Wampler's notebook contains other such deranged, incoherent diagrams demonstrating the depth of his mental health illness.

[20] Wampler admitted to driving by K.S.'s mother's home since he was in high school. According to Wampler, he also left a box of whipped butter on K.S.'s mother's front porch in 1995. This was perhaps the first outward sign of the extent of Wampler's mental illness.

[21] In the late spring of 2014, K.S. began to notice unusual occurrences and items around his house. Specifically, he found that his ax, which had been in his back yard near a wood pile, was on his front porch. Wampler had taken the ax and later returned it, he claimed, with "a note and a bottle of rye." Ex. Vol., State's Ex. 4, p. 22.

[22] Early on the morning of June 30, 2014, Wampler "finally got the guts" to enter K.S.'s house. *Id.*, State's Ex. 4. p. 12. Wampler broke the screen covering a window in the laundry room, opened the window, and entered the home while K.S. was asleep. While in the house, he noticed K.S.'s work identification card and wanted to take it because it had K.S.'s picture on it. However, he decided not to take the card because he was afraid that K.S. would be "in trouble" if he lost the card. *Id.* at 21.

[23] Wampler saw someone in the bed, who he believed was K.S. Wampler watched K.S. as he slept, and later stated, "I think I could have reached out and touched him," but was unable to recall if he had actually touched K.S. *Id.* at 12. Before he left the home, Wampler took a bottle of Samuel Adams beer from K.S.'s refrigerator. He also took a paper from K.S.'s refrigerator that contained a photocopy of a quote from Nelson Mandela. Wampler left a note for K.S. that

stated, "I love you sorry about the screen[.] [T]here are too many as is." *Id.*, State's Ex. 1.

[24] For the next few days, K.S. found additional items, including greeting cards and a bottle of whiskey on his porch. K.S. then began to suspect that the person who had left the note in his mailbox might be the person who committed the break-in. K.S. began to ask his friends about Wampler, and one of them found Wampler's Facebook page, which contained a post stating:

> Enjoying a Samuel Adams Winter Lager. It expires this month. It was stolen from a friend's refrigerator, which contents were absolutely note perfect, if you like to think in 50 year increments. I also stole this posting from his refrigerator door.
>
> *Our deepest fear is not that we are inadequate. Our deepest fear is that we are powerful beyond measure. It is our light, not our darkness, that most frightens us. We ask ourselves, who am I to be brilliant, gorgeous, talented and fabulous? Actually, who are you not to be? You are a child of God. Your playing small doesn't doesn't [sic] serve the world. There's nothing enlightened about shrinking so that other people won't feel insecure around you. We are all meant to shine, as children do. We are born to make manifest the glory of God that is within us. It's not just in some of us, it's in everyone. And as we let our own light shine, we unconsciously give other people permission to do the same. As we are liberated from our own fear, our presence automatically liberates others.*
>
> I don't know when I'll be back, but everything in his home was so accepting and wonderful and perfect. But it wasn't you, sir. It was all about me. You have your own life. Your own fears. Tell me about them.

Ex. Vol., State's Ex. 7 (emphasis added).[2]

[25] After seeing this post, K.S. returned home and confirmed that the paper and beer were missing. K.S. then called the telephone number Wampler had left on the letter he had placed in K.S.'s mailbox. Someone picked up the phone on the other end of the line but did not speak; all K.S. could hear was someone whispering in the background. Wampler later called K.S. back and admitted to breaking into K.S.'s home. K.S. reported this to the police, who interviewed Wampler. Wampler waived his Miranda rights and freely admitted to entering K.S.'s house. Thus, Wampler never denied his behavior, also indicative of the extent of his mental illness and his inability to help himself.

[26] Within one month of Wampler's arrest and incarceration, his counsel filed a motion for a psychological evaluation to determine Wampler's competency to stand trial. After a hearing on the matter, the trial court granted the motion, and, on November 5, 2014, slightly more than four months after Wampler's arrest and incarceration, the clinical psychologist appointed by the court filed a report indicating that, in his opinion, and to no one's surprise, Wampler was not competent to stand trial at that time. One week later, the trial court entered an order finding Wampler incompetent. Wampler was then treated at Logansport State Hospital, and on February 25, 2015, after two months of medication and treatment, Wampler was determined to be competent for trial.

---

[2] The above-emphasized portion is the Mandela quotation that was on K.S.'s refrigerator.

## Discussion and Decision

[27] Although Wampler challenges only the appropriateness of his sentence, the most important issue in this case is the clear failure, yet again, of our criminal justice system to adequately and properly respond to and treat those with mental health issues.

[28] I have noted before the "large and ironic lapse in the logic of our criminal justice system," in which the "initial imperative is to determine the competency of defendants prospectively, to assist counsel at trial," not to promptly consider whether the defendant was competent at the time the crime was committed. *Habibzadah v. State*, 904 N.E.2d 367, 370-71 (Ind. Ct. App. 2009) (Mathias, J., concurring); *see also A.J. v. Logansport State Hosp.*, 956 N.E.2d 96, 117-18 (Ind. Ct. App. 2011) (Mathias, J., concurring); *Gross v. State*, 41 N.E.3d 1043, 1051-52 (Ind. Ct. App. 2015) (Mathias, J., concurring); *Robinson v. State*, No. 12A02-1507-CR-784, ___ N.E.3d ___, 2016 WL 2343823, at *8 (Ind. Ct. App. May 4, 2016) (Mathias, J., concurring) (all citing my concurring opinion in *Habibzadah*).

[29] "I continue to believe that our criminal procedure should permit a psychiatric examination of a defendant who likely suffers from serious mental illness very early after arrest to determine whether the defendant could have possibly had the requisite scienter or mens rea at the time of the crime." *Gross*, 42 N.E.3d at 1052 (Mathias, J., concurring). I repeat my mantra yet again:

> Our criminal justice system needs an earlier and intervening procedure to determine competency retroactively to the time of the alleged crime. Perhaps we as a society need to consider the concept of a defendant being unchargeable because of mental illness under Indiana Code section 35-41-3-6, and not just guilty but mentally ill under Indiana Code section 35-36-2-1, *et. seq.* In either case, the commitment proceedings provided for in Indiana Code section 35-36-2-4 would both protect society and best care for the defendant involved.

> [I]t is time for the truly long-term, incompetent criminal defendant to have an earlier and intervening opportunity for a determination of his or her competency at the time of the crime alleged. Such a procedure convened soon after arrest, rather than years later when stale evidence and dim or non-existent memories are all that are left, or never, would best serve society and the defendant.

*Habibzadah*, 904 N.E.2d at 371 (Mathias, J., concurring).

[30]     Turning to the issue presented by Wampler on appeal, I believe that a thirty-three-year sentence is completely inappropriate in this case. Wampler broke into the victim's home, without question. However, the facts surrounding the occurrence call into question whether a reasonable trier of fact could reach the conclusion that sufficient evidence proves that Wampler had the requisite criminal intent to commit a felony in the home. Because Wampler has not challenged the sufficiency of the evidence to support his conviction, I note this only to emphasize that this case is totally unlike the typical burglary, where the defendant breaks into a home to commit theft. Instead, Wampler broke into K.S.'s home to take mementos connected to the object of his obsession. Also, Wampler freely admitted his actions to the police. Accordingly, I agree with

Wampler that his burglary was a relatively minor one involving minimal property damage and the taking of items of little to no monetary value. This alone should weigh in favor of a lesser sentence.

[31] Although Wampler has a criminal history, much of this is undoubtedly the result of his mental illness. Indeed, his abuse of illicit drugs is all too typical self-medication of untreated mental illness. *See* Michael Vitiello, *Addressing the Special Problems of Mentally Ill Prisoners*, 88 Denv. U. L. Rev. 57, 67 (Fall 2010); Katherine M. Harris & Mark J. Edlund, *Self-Medication of Mental Health Problems*, Health Services Research, Vol. 40, Issue 1, pp. 117-134 (Feb. 2005).[3]

[32] Wampler was seriously mentally ill for years before this eerie and bizarre burglary. In all likelihood, he was also so mentally ill at the time of the crime that he could not have formed the requisite *scienter* so as to be criminally responsible for his behavior. Had his psychiatric examination been directed to his mental health at the time of the crime, rather than to his ability to assist his counsel at trial, he could have been, and should have been, civilly committed to a state mental health institution, rather than charged with a crime. This is a clear case of punishing someone for mental illness rather than having any interest in humanely recognizing the difference between mental illness and criminal behavior. We Hoosiers are better than that, and indeed, I believe that

---

[3] This article is available online at http://onlinelibrary.wiley.com/doi/10.1111/j.1475-6773.2005.00345.x/full.

Article 1, Sections 15, 16 and 18 of the Constitution of Indiana expect us to be better than that.

[33] The real tragedy is that Wampler was not tried under the closest alternatives we have to humane treatment of the mentally ill: as insane at the time of the behavior charged or as someone who was guilty but mentally ill. Had Wampler been found not guilty by reason of insanity, temporary or permanent commitment proceedings would have been commenced immediately for the treatment Wampler needs, and he might never emerge from the mental health system. *See* Ind. Code § 35-36-2-4(a) (providing that if a defendant is found not guilty by reason of insanity, the prosecuting attorney is required to initiate commitment proceedings against the defendant). Had he been found guilty but mentally ill, at least Wampler would have qualified for mandatory evaluation and treatment "in such a manner as is psychiatrically indicated for the defendant's mental illness." Ind. Code § 35-36-2-5(c). If found guilty but mentally ill, that treatment could also have been carried out by transfer to a state mental health facility. *Id.*

[34] Under these facts and circumstances, I cannot agree that a thirty-three-year sentence is appropriate given the nature of the offense—a minor burglary—and the character of the offender—a man with obvious, serious mental health issues. I therefore respectfully dissent from the majority opinion. Because Wampler challenged only his sentence as inappropriate, I would find it to be so and reverse Wampler's sentence and remand with instructions to impose the minimum sentence of six years with a ten-year habitual offender enhancement.