


FILED

Mar 28 2025, 9:20 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

IN THE

# Court of Appeals of Indiana

Kathryne Tillett,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

March 28, 2025

Court of Appeals Case No.
24A-CR-1413

Appeal from the Floyd Circuit Court

The Honorable Justin B. Brown, Judge

Trial Court Cause No.
22C01-2202-F1-212

---

**Opinion by Judge Brown**
Judge Tavitas concurs.
Chief Judge Altice dissents with separate opinion.

**Brown, Judge.**

[1] Kathryne Tillett appeals her convictions and sentence for two counts of child molesting as level 1 felonies. She raises three issues, one of which we find dispositive and revise and restate as whether the trial court abused its discretion in denying her request to assert an insanity defense. We reverse and remand.

## Facts and Procedural History

[2] On February 11, 2022, the State charged Tillett with two counts of child molesting as level 1 felonies related to alleged conduct with her two children, E.W. and I.B. On February 14, 2022, the court held a hearing and set the omnibus date for April 26, 2022. On April 26, 2022, the court held a pretrial conference, and the chronological case summary indicates: "OMNI Commenced and concluded." Appellant's Appendix Volume II at 5.

[3] On July 11, 2022, the court held a conference, and Tillett's counsel indicated that he was awaiting the results of a psychological evaluation and asked the court to continue the trial. The court scheduled a new pretrial conference for August 2, 2022. On October 17, 2022, the court held a conference, and Tillett's counsel indicated that he had not received the psychological report "until Thursday" and requested a continuance. Transcript Volume II at 16. The court granted the motion.

[4] On March 23, 2023, Tillett's counsel filed a Motion for Competency Evaluation. On March 27, 2023, the court entered an order appointing two doctors to examine Tillett and file written reports as to whether she lacked the

ability to understand the proceedings and assist counsel in the preparation of a defense.

[5]     On April 12, 2023, Dr. James Anderson filed a forensic evaluation which found that Tillett had a mental illness and engaged in behaviors typical of psychosis. He diagnosed her with "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder" and wrote that she "engaged in bizarre behavior and appeared to be responding to internal stimuli." Appellant's Appendix Volume II at 72. He also wrote: "It's my opinion that Ms. Tillett[] is an unreliable historian due to her psychosis, which impedes her ability to provide important historical information for defense planning." *Id.* at 74. He concluded that Tillett was capable of understanding the proceedings but was not "presently capable of assisting in the preparation of her defense." *Id.* at 73. He indicated that he believed "there is a good chance [Tillett] could be restored to competency with treatment." *Id.* at 74. On July 13, 2023, Dr. Heather Henderson filed an evaluation concluding that Tillett was capable of assisting in her defense, was able to participate in her own defense, had a basic understanding of the court proceedings, and was "clearly competent to stand trial." *Id.* at 86.

[6]     On September 21, 2023, the court held a competency hearing. Tillett presented the testimony of Dr. Henderson and Dr. Anderson. Tillett's counsel asked Dr. Henderson "if Ms. Tillett did not express to you other prior diagnoses that she had related to her mental health, would that be concerning to you for purposes of determining her competency to stand trial?" Transcript Volume II at 34. Dr.

Henderson answered: "That would probably be more interesting for me to review for insanity, as competency in my opinion . . . ." *Id.* Dr. Anderson stated that Tillett "had a difficult time paying attention to my questions, and it was as if she was distracted by what we call internal stimuli, which is usually it could be voices in the head; it could be intrusive thoughts." *Id.* at 46.

[7] On September 21, 2023, the court entered an order finding that Tillett "presently lacks the ability to understand the proceedings and to assist in the preparation of a defense," ordering that the proceedings be continued, and committing Tillett to the Indiana Division of Mental Health and Addiction for competency restoration services. Appellant's Appendix Volume II at 92.

[8] On December 20, 2023, the State filed a motion for a competency status conference. On January 17, 2024, the court scheduled a conference for February 15, 2024. On January 26, 2024, John Reynolds, the Superintendent of the Indiana NeuroDiagnostic Institute and Advanced Treatment Center, filed a letter indicating that, according to a report filed by Dr. Anjum Ara, Tillett had attained the ability to understand the proceedings and assist in the preparation of her defense. Dr. Ara's report indicated that Tillett had been medicated, received psychotherapy, and "can now understand the court proceedings and assist in preparing her defense." *Id.* at 108.

[9] On February 19, 2024, the court scheduled a final pretrial conference for March 21, 2024, and a jury trial for April 15, 2024. On April 3, 2024, Tillett's counsel filed a Motion to Permit Belated Notice of Insanity Defense in which he argued

that, though defense counsel had concerns about Tillett's mental state, "it was not until [Tillett] completed a psychological evaluation through the related CHINS cases that the reality of her severe mental health needs and their potential impact on this case began to take focus" and Tillett "completed that psychological evaluation through a provider selected by the [DCS] . . . on December 2, 2022, with the report completed on February 25, 2023." *Id.* at 139-140. Tillett's counsel asserted that he also served as Tillett's counsel in the CHINS cases and was "unable to have a logical, coherent conversation with [Tillett] at any point in 2023." *Id.* at 140. He stated that, "[s]ince being returned to the Floyd County Jail, both defense attorneys have had multiple opportunities to speak with [Tillett]" and, "[w]hile her mannerisms and behavior are certainly better than they were prior to her commitment to [the Division of Mental Health and Addiction], the reality is that [Tillett] is still incapable of having a meaningful, substantive conversation about the facts, evidence, and legal issues in this case." *Id.* at 140-141.

[10] On April 4, 2024, the court held a hearing. The prosecutor objected to Tillett asserting an insanity defense. The court spoke with E.W. and I.B. The State presented the testimony of Dr. Cindy Ross, who had been assigned to evaluate E.W. and I.B. in the CHINS case, Anna-Lina Olsen, a counselor who provided counseling to E.W. and I.B., and Tillett's mother. That same day, the court entered an order denying Tillett's motion. Specifically, the court mentioned "the lack of evidence presented regarding [Tillett's] mental health history & diagnoses," "the extremely belated timing of the request," "the absence of an

acceptable explanation for the timing," and "the risks of [Tillett] again decompensating while in custody." *Id.* at 202.

[11] Beginning on April 15, 2024, the court held a jury trial. The jury found Tillett guilty as charged. At the beginning of the sentencing hearing, Tillett's counsel moved "pursuant to Trial Rule 50 for the Court to modify the – the verdict and judgment in this case to a guilty but mentally ill verdict." Transcript Volume V at 240. The prosecutor objected, and the court denied the motion. Floyd County Jail Sergeant Floyd Wingard testified that Tillett's incarceration in this matter began in February 2022 and there were a number of incidents in which Tillett was involved at the jail for not following orders including inappropriate touching, following inmates, kissing inmates, and exposing herself to other inmates. He indicated that there was a drastic decline in incidents after she returned from competency restoration and after being medicated.

[12] Spencer Day, the permanency caseworker, testified that Maya Ritter conducted a clinical interview and assessment during the CHINS case and diagnosed Tillett with schizoaffective disorder, posttraumatic stress disorder, and "other stimulant use disorder in remission." Transcript Volume VI at 16. He indicated that DCS referred Tillett for a psychosexual evaluation which was more in-depth than the clinical interview and which was completed by Dr. Amanda Pfeffer in December 2022. Dr. Pfeffer completed a report in February 2023 and diagnosed Tillett with schizophrenia, stimulant use disorder, borderline intellectual functioning, child sexual abuse, "suspected initial encounter," and a personal history of sexual abuse in childhood. *Id.* at 18. The

report listed Tillett's full scale IQ of 72 which it classified as borderline. During cross-examination, Day indicated that he had fairly limited interaction in the prior few months and that Tillett did not have the same concerning behaviors that he observed before she received competency restoration services.

[13] In part, the court found that Tillett had posttraumatic stress disorder as a mitigator, which it assigned moderate weight. It found that Tillet was a victim of abuse as a mitigator, noted that Tillett reported having been victimized when she was four years old, and gave "that limited weight insofar as that's self-reported." *Id.* at 39. It referenced Tillett's diagnosis and gave that moderate weight.[1] The court sentenced Tillett to forty years for each offense and ordered that the sentences be served consecutively for an aggregate sentence of eighty years.

## Discussion

[14] Tillett claims that the trial court abused its discretion in denying her belated request to assert an insanity defense. She contends that defense counsel explained why the insanity defense was belatedly filed including a discussion of the difficulty in trying to obtain a psychological assessment and in trying to take

---

[1] Specifically, the court stated:

> [H]er diagnoses, I've heard schizoaffective, heard unspecified schizophrenic disorder. But there's no doubt about PTSD and the resolved substance abuse use disorders. To the degree of the schizophrenia or the – not schizophrenia, schizoaffective or unspecified schizo disorder, like there's – it's kind of all over the place, a little bit in that area. So I'm going to give that moderate weight, however.

Transcript Volume VI at 40.

appropriate steps to ascertain her competency. Tillett argues that "the evidence overwhelmingly shows that [her] alleged inappropriate sexual conduct is directly driven by her mental illnesses." Appellant's Brief at 23.

[15] Ind. Code § 35-36-2-1 provides:

> When the defendant in a criminal case intends to interpose the defense of insanity, he must file a notice of that intent with the trial court no later than:
>
>> (1) twenty (20) days if the defendant is charged with a felony; or
>>
>> (2) ten (10) days if the defendant is charged only with one (1) or more misdemeanors;
>
> before the omnibus date. However, in the interest of justice and upon a showing of good cause, the court may permit the filing to be made at any time before commencement of the trial.

[16] The omnibus date in this case was ultimately set for April 26, 2022. Thus, under the statute, Tillett was required to file her notice of an insanity defense by April 6, 2022. As Tillett attempted a late filing of the required notice, the trial court had discretion whether to accept it. *See Ankney v. State*, 825 N.E.2d 965, 970 (Ind. Ct. App. 2005) ("Ankney attempted a late filing of the required notice, and, thus, the trial court had discretion whether to accept it.") (citing *Eveler v. State*, 524 N.E.2d 9, 11 (Ind. 1988) (holding that, after the omnibus date, "the trial court's discretion controlled" and "[s]uch discretion is exercisable upon a showing of good cause by a defendant who has missed the deadline")), *trans. denied*.

We find the Indiana Supreme Court's comments in *Wampler v. State*, 67 N.E.3d 633 (Ind. 2017), instructive. In that case, Anthony Wampler had a history of psychiatric problems and hospitalizations. 67 N.E.3d at 634. Wampler initially was found incompetent to stand trial, received treatment, and was later found competent. *Id.* After a bench trial, Wampler was convicted of two counts of burglary as class B felonies and was adjudicated an habitual offender. *Id.* The trial court sentenced Wampler to concurrent eighteen-year terms on the burglary convictions, enhanced by fifteen years for the habitual offender adjudication, for an aggregate sentence of thirty-three years. *Id.* Wampler appealed, contending his sentence was inappropriate under Indiana Appellate Rule 7(B). *Id.* The Court of Appeals affirmed Wampler's sentence. *Id.* (citing *Wampler v. State*, 57 N.E.3d 884 (Ind. Ct. App. 2016), *reh'g denied*). Judge Mathias dissented and would have granted Wampler sentencing relief. *Id.* (citing 57 N.E.3d at 887-892 (Mathias, J., dissenting)).

On transfer, the Indiana Supreme Court observed that Judge Mathias noted, "[a]lthough Wampler challenges only the appropriateness of his sentence, the most important issue in this case is the clear failure, yet again, of our criminal justice system to adequately and properly respond to and treat those with mental health issues." *Id.* (quoting 57 N.E.3d at 890 (Mathias, J., dissenting)). The Court further observed that Judge Mathias "referred to what he characterizes as 'the large and ironic lapse in the logic of our criminal justice system, in which the initial imperative is to determine the competency of defendants prospectively, to assist counsel at trial, not to promptly consider

whether the defendant was competent at the time the crime was committed.'"
*Id.* (quoting 57 N.E.3d at 890 (Mathias, J., dissenting) (internal quotation marks
and citations omitted)). It also noted that Judge Mathias opined:

> The real tragedy is that Wampler was not tried under the closest
> alternatives we have to humane treatment of the mentally ill: as
> insane at the time of the behavior charged or as someone who
> was guilty but mentally ill. Had Wampler been found not guilty
> by reason of insanity, temporary or permanent commitment
> proceedings would have been commenced immediately for the
> treatment Wampler needs, and he might never emerge from the
> mental health system. *See* Ind. Code § 35-36-2-4(a) (providing
> that if a defendant is found not guilty by reason of insanity, the
> prosecuting attorney is required to initiate commitment
> proceedings against the defendant). Had he been found guilty
> but mentally ill, at least Wampler would have qualified for
> mandatory evaluation and treatment "in such manner as is
> psychiatrically indicated for the defendant's mental illness."
> [I.C.] § 35-36-2-5(c). If found guilty but mentally ill, that
> treatment could also have been carried out by transfer to a state
> mental health facility. *Id.*

*Id.* at 634-635 (quoting 57 N.E.3d at 891 (Mathias, J., dissenting)). The Court
found Judge Mathias's comments insightful and ultimately found Wampler's
sentence inappropriate and remanded the case to the trial court with
instructions to enter an aggregate sentence of sixteen years. *Id.* at 635. While
the defendant in *Wampler* challenged only the appropriateness of his sentence,
we find the Indiana Supreme Court's discussion instructive.

[19] The record does not reveal that Tillett's counsel received any psychological
report prior to the April 26, 2022 omnibus date. Dr. Anderson's forensic

evaluation, which was filed on April 12, 2023, found that Tillett had a mental illness and was not "presently capable of assisting in the preparation of her defense." Appellant's Appendix Volume II at 73. He observed that Tillett engaged in behaviors typical of psychosis and "appeared to have a difficult time sustaining attention to [his] questions, as if distracted by internal stimuli." *Id.* at 71. He diagnosed her with "Unspecified Schizophrenia Spectrum and Other Psychotic Disorder" and wrote that she "engaged in bizarre behavior and appeared to be responding to internal stimuli." *Id.* at 72. He also wrote, "It's my opinion that Ms. Tillett[] is an unreliable historian due to her psychosis, which impedes her ability to provide important historical information for defense planning." *Id.* at 74. He further indicated that he believed "there is a good chance [Tillett] could be restored to competency with treatment." *Id.* During the September 21, 2023 competency hearing, Dr. Anderson stated that Tillett "had a difficult time paying attention to my questions, and it was as if she was distracted by what we call internal stimuli, which is usually it could be voices in the head; it could be intrusive thoughts." Transcript Volume II at 46.

[20] In its September 21, 2023 order, the trial court found that Tillett "presently lacks the ability to understand the proceedings and to assist in the preparation of a defense," ordered that the proceedings be continued, and committed Tillett to the Indiana Division of Mental Health and Addiction for competency restoration services. Appellant's Appendix Volume II at 92. It was not until January 26, 2024, that Reynolds filed his letter which referenced Dr. Ara's report and indicated that Tillett had attained the ability to understand the

proceedings and assist in the preparation of her defense. Reynolds wrote, "In order to maintain her current level of mental/emotional stability and competence when she returns to jail to await trial it is imperative that she remain on her medications." *Id.* at 102. Dr. Ara's report indicated that Tillett was medicated "[f]or psychosis." *Id.* at 104. Dr. Ara also wrote:

> [Tillett] was stabilized with a combination of medication and psychotherapy. Medication doses were adjusted over time based on clinical efficacy and tolerability. During hospitalization, [Tillett] progressively improved. During the latter part of hospitalization, [Tillett] did not exhibit any significant symptoms of psychosis, depression, or mania and was free of any major outbursts.

*Id.* at 105.

[21] A little over two months passed between the time Reynolds filed his January 26, 2024 letter, and the time Tillett's counsel filed the Motion to Permit Belated Notice of Insanity Defense on April 3, 2024. Under these circumstances, we conclude that Tillett made a showing of good cause. Mindful of the Indiana Supreme Court's comments in *Wampler*, we conclude that granting Tillett's Motion to Permit Belated Notice of Insanity Defense would have been in the

interest of justice and that the trial court abused its discretion in denying the motion.[2]

[22] For the foregoing reasons, we reverse Tillett's convictions and remand for proceedings consistent with this opinion.

[23] Reversed and remanded.

Tavitas, J., concurs.

Altice, C.J., dissents with separate opinion.

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Fishers, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney General
Indianapolis, Indiana

---

[2] We note that Sergeant Wingard's testimony regarding the drastic decline in incidents after Tillett returned from competency restoration and after receiving proper medication, Day's testimony that Tillett did not have the same concerning behaviors that he observed before she received competency restoration services, and the trial court's consideration of Tillett's diagnosis as a mitigator support this conclusion.

**Altice, Chief Judge, dissenting.**

I respectfully dissent, as I do not believe that the trial court abused its discretion by denying Tillett's motion to permit belated notice of insanity defense, which was filed less than two weeks before trial and nearly two years after the statutory deadline. While Ind. Code § 35-36-2-1 grants a trial court discretion to permit filing of such a notice any time before commencement of trial, the statute requires a defendant to make a showing of good cause for the late filing. *See Eveler v. State*, 524 N.E.2d 9, 11 (Ind. 1988) ("Such discretion is exercisable upon a showing of good cause by a defendant who has missed the deadline.").

Tillett argued to the trial court that good cause existed for the delay because not much was known about her mental health until after the deadline for filing the insanity notice had passed. Defense counsel explained that he could not obtain a "concrete understanding" of Tillett's mental health until a psychosexual evaluation was obtained in the CHINS matter that "confirmed that she had a schizophrenia diagnosis." *Transcript Vol. 2* at 65. That evaluation took place in December 2022, with a 29-page report issued on February 25, 2023. With this evaluation in hand, along with contemporaneous "observed behaviors" of Tillett by counsel, jail staff, and family, defense counsel promptly raised the issue of Tillett's competency to stand trial. *Id*. But defense counsel did not file a belated notice of the insanity defense at that time. Nor did counsel do so after the forensic evaluation report was filed in April 2023, in which the evaluator noted that Tillett "engage[d] in behaviors typical of psychosis" at the time of the evaluation, diagnosed her with "Unspecified Schizophrenia Spectrum and

Other Psychotic Disorder," and opined that she was not competent to stand trial. *Appellant's Appendix Vol. II* at 71, 72.

[26] In sum, Tillett obtained the psychological evaluations in February 2023 and April 2023,[3] yet she waited another year before filing her motion to permit belated notice of insanity defense. Tillett also filed a motion to continue the jury trial, which was less than two weeks away, so that she could retain an expert to "present relevant evidence to the jury regarding [her] mental status and its effect on any culpability that [she] may have for the charged conduct in this matter." *Id.* at 145. She baldly asserted that it "was not possible for counsel to investigate and pursue [this] until [her] competency could be restored[.]" *Id.*

[27] In finding that Tillett had not established good cause for the delay, the trial court explained:

> Guiding the Court in reaching this decision was the lack of evidence presented regarding Defendant's mental health history & diagnoses, both prior to and at or about the time of the alleged acts, the extremely belated timing of the request, the absence of an acceptable explanation for the timing, as well as the risks of Defendant again decompensating while in custody.

The court continued: "Notably, **any issues regarding Defendant's mental health would not have been freshly revealed**, especially given the awareness of

---

[3] Notably, Tillett was released from the NeuroDiagnostic Institute in February 2024 with a diagnosis of intermittent explosive disorder, which was being managed with medications for mood stabilization and psychosis. That is, while institutionalized for several months to gain her competency to stand trial, she was not diagnosed with schizophrenia or any other psychotic disorder.

the associated CHINS cases and the availability of that information to the parties[.]" *Id.* (emphasis added).

[28] In my opinion, the trial court's determination in this regard was not an abuse of discretion. While there was certainly good cause for missing the April 2022 deadline for filing the insanity notice, the trial court could reasonably determine that defense counsel did not have good cause for waiting more than a year after getting a "concrete understanding" of Tillett's mental health with the February 2023 schizophrenia diagnosis. *Transcript Vol. 2* at 65. When the belated motion was finally filed, the criminal case had been pending for over two years, the scheduled jury trial was around the corner, Tillett's original schizophrenia diagnosis was more than a year old (and no longer a current diagnosis), and the defense had yet to make any effort to investigate whether Tillett was suffering from any form of psychosis that would have affected her culpability at the time she allegedly committed the offenses.[4] Under these circumstances, I would affirm the trial court's denial of Tillett's motion to belatedly assert an insanity defense. *See Zamani v. State*, 33 N.E.3d 1130, 1135-41 (Ind. Ct. App. 2015) (affirming denial of belated motion where insanity defense was not raised until five days before trial despite reports and other evidence, developed during competency proceedings more than a year earlier, that documented defendant's mental illness and provided "defense counsel adequate time to prepare and file

---

[4] This case is not like *Wampler v. State*, 67 N.E.3d 633 (Ind. 2017), where the defendant had a thirty-year "history of psychiatric problems and hospitalizations" dating back to his teen years. *Id.* at 634.

a notice of intent to assert an insanity defense if it were desired and merited"), *trans. denied*.

[29] Affirming the denial of the motion then leaves two other appellate issues, which I will briefly address. Tillett first contends that the trial court abused its discretion by admitting into evidence the children's forensic interviews under the Protected Person Statute (PPS), Ind. Code § 35-37-4-6. Her only argument is that the children's statements made during their forensic interviews lacked sufficient indicia of reliability. *See* I.C. § 35-37-4-6(f)(1) (requiring "that the time, content, and circumstances of the statement or videotape provide sufficient indications of reliability").

[30] In evaluating the reliability of a child's statement, a trial court should consider such things as whether there was a significant opportunity for coaching, the nature of the questioning, whether there was a motive to fabricate, the child's use of age-appropriate language, and spontaneity and repetition of the disclosures. *See Perryman v. State*, 80 N.E.3d 234, 242 (Ind. Ct. App. 2017).

[31] Here, the forensic interviews were conducted by a qualified interviewer[5] with the Child Advocacy Center less than twenty-four hours after E.W. made her spontaneous disclosure to her first-grade teacher at the end of the school day. This brief period between the initial disclosure and the forensic interviews did

---

[5] E.W. was the first to be interviewed, and the interviewer went into the interview blindly, meaning that the specific allegations of abuse were not known by the interviewer.

not present a significant opportunity for coaching, especially where the interim safety plan included directions to the children's caretaker that night, their maternal grandmother, not to discuss the matter with the children before the interviews. Further, the children used age-appropriate language during their interviews and I.B. physically demonstrated how Tillett molested her; there has been no suggestion of a motive to fabricate; the children's disclosures were consistent with E.W.'s initial disclosure to her teacher and their later disclosures during therapy; and there was no suggestion that E.W., who was seven years old at the time of her disclosure, was unable to distinguish between the truth and a lie.[6] Under the circumstances, the trial court did not abuse its discretion by finding that the statements made by the children during their forensic interviews were reliable and admissible under the PPS.

[32] The last issue presented by Tillett involves a challenge to her eighty-year aggregate sentence. She seeks our independent review of the appropriateness of her sentence under Ind. Appellate Rule 7(B), which allows us to revise a sentence if "after due consideration of the trial court's decision" we find that "the sentence is inappropriate in light of the nature of the offense and the character of the offender." *See Hoak v. State*, 113 N.E.3d 1209, 1209 (Ind. 2019) ("Even when a trial court imposes a sentence within its discretion, the Indiana

---

[6] Pursuant to I.C. § 35-37-4-6(f)(2)(B)(i), the trial court found the children unavailable to testify at trial because testifying in Mother's physical presence would cause them to suffer serious emotional distress such that they could not reasonably communicate. Notably, the court expressly did not find that the children were incapable of understanding the nature and obligation of an oath, which is an alternative basis for finding a child unavailable. *See* I.C. § 35-37-4-6(f)(2)(B)(iii).

Constitution authorizes independent appellate review and revision of this sentencing decision.").

[33] Our principal task in this regard is "'to attempt to leaven the outliers,' not to achieve a 'correct' result in every case." *Hancz-Barron v. State*, 235 N.E.3d 1237, 1248 (Ind. 2024) (quoting *Cardwell v. State*, 895 N.E.2d 1219, 1225 (Ind. 2008)). "And we generally defer to the sentence imposed unless a defendant presents 'compelling evidence' portraying the nature of the offense and their character in a positive light." *Id*. (quoting *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015)). Thus, Tillett bears the responsibility of persuading us that her sentence is inappropriate. *See Robinson v. State*, 91 N.E.3d 574, 577 (Ind. 2018).

[34] Tillett's argument is that imposition of "the maximum possible sentence" was inappropriate in light of her character, particularly her mental illness, and the nature of her offenses, which she claims were "not egregious in a manner not already inherent in the nature of such child molesting offenses." *Appellant's Brief* at 25.

[35] The first glaring mistake with her argument is that the trial court did not impose the maximum sentence. Rather than 80 years, the maximum aggregate sentence Tillett faced for her two Level 1 felony convictions was 100 years. *See* Ind. Code § 35-50-2-4(c) ("A person who commits a Level 1 felony child molesting offense described in [Ind. Code § 35-42-4-3(a)(1)] shall be imprisoned for a fixed term of between twenty (20) and fifty (50) years, with the advisory sentence being thirty

(30) years."). The trial court imposed forty-year, consecutive sentences here, not fifty.

[36] Regarding the nature of the offenses, I reject any notion that her crimes were not more egregious than the average Level 1 felony child molest case. The facts establish that Tillet digitally penetrated her own daughters, then ages seven and three, on many occasions, sometimes in the presence of the other child. E.W. described hearing I.B. cry during the abuse and stated that Tillett "pokes [I.B.] a lot, and a lot, and a lot" when changing her diaper. *Transcript Vol. 5* at 139. E.W. also noted that after Tillett would penetrate E.W.'s vagina or anus with her finger, which caused pain, E.W. would often bleed. E.W. asked Tillet to stop, but she did not, even when E.W. told her it hurt. The abuse stopped only after E.W. went to her first-grade teacher and asked her to write a note to Tillett telling her to "quit hurting me." *Transcript Vol. 3* at 107. At that point, others stepped in to protect the children from their mother. The nature of the offenses against these two victims of tender age was certainly deserving of aggravated and consecutive sentences.

[37] Turning to her character, Tillett focuses solely on her mental health, which she claims had a clear nexus with her crimes. While she no doubt suffers from mental illness, the evidence of her alleged "psychosis" is not so clear. *Appellant's Brief* at 30. That is, when she was institutionalized during the competency proceedings, which appears to be her first ever hospitalization for mental illness, she was not diagnosed with any form of schizophrenia or psychosis. She was released to the jail with medications for a diagnosis of intermittent

explosive disorder. The medications were effective in controlling her behavior at the jail, but Tillett indicated to the probation officer preparing the presentence investigation report (PSI) that "she does not believe she needs medication and that she takes it to keep herself from going to segregation." *Appellant's Appendix Vol. II* at 210. These remarks indicate that Tillett would likely stop taking her medication if given the chance.[7]

[38] More telling of Tillett's character, in my opinion, is her absence of remorse. Even after being medicated, she continues to lack any empathy for her children, and she specifically blames E.W. Upon speaking with Tillett, the probation officer summarized, in the PSI, Tillett's attitude:

> The defendant's attitude toward this instant offense … was very brash…. The defendant was adamant that she did not commit this instant offense and blamed the victims stating, "it's bullshit, I didn't do it, I'm innocent." "I feel as if my daughter was watching inappropriate YouTube videos and touching herself and her sister." The defendant was asked how she thinks the victims feel and she stated, "I don't really know how to say how they feel."

---

[7] There was also testimony at the sentencing hearing from a jail officer indicating that after Tillett was found guilty and returned to the jail, she immediately asked if she could refuse her medication, to which she was told, "absolutely not." *Transcript Vol. 5* at 247.

*Appellant's Appendix Vol. II* at 215. Tillett is, of course, entitled to maintain her innocence, but blaming E.W.[8] further victimizes this child.[9]

[39] Tillett has not presented compelling evidence portraying the nature of her offenses or her character in a positive light, and she incorrectly claims that the trial court imposed the maximum sentence when the sentence was, in fact, twenty years less than the maximum. Accordingly, I would affirm her sentence along with her convictions.

---

[8] The trial court aptly described Tillett's accusations of E.W. as "diabolical" and "heinous." *Transcript Vol. 6* at 45.

[9] E.W. suffered under Tillett's care even before the instant offenses. In July 2019, E.W. was witness to Tillett's felony domestic battery of two relatives, for which Tillett was sentenced to jail time followed by one year of probation.